[No. D041738. Fourth Dist., Div. One. Apr. 27, 2004.]

NANCY FITZ, Plaintiff and Respondent. v.
NCR CORPORATION, Defendant and Appellant.

**COUNSEL**

Sheppard, Mullin, Richter & Hampton, Karin Dougan Vogel, Julie A. Dunne and John A. English for Defendant and Appellant.

J. Michael Vallee; Saad & Associates, Leon J. Saad; and Diane Therese Letarte for Plaintiff and Respondent.

**OPINION**

**NARES, Acting P. J.**—This case arises out of the termination of plaintiff Nancy Fitz's employment with defendant NCR Corporation (NCR), and Fitz's subsequent wrongful termination complaint against NCR. NCR appeals from a February 2003 ruling that found an arbitration clause in the company's employee-dispute resolution policy to be unconscionable, and therefore unenforceable.

In her complaint against NCR, Fitz alleged causes of action for age discrimination, breach of implied contract, breach of the covenant of good faith and fair dealing, fraud and violation of public policy. NCR demurred to the complaint, arguing that Fitz had waived her right to pursue her claims by failing to exhaust the arbitration remedies as provided for in the company's employee-dispute resolution policy, known as Addressing Concerns Together (ACT). In the alternative, NCR sought to compel arbitration under the ACT policy terms. In response, Fitz asserted that the arbitration agreement was invalid because it was both procedurally and substantively unconscionable. Furthermore, Fitz requested the court to find invalid unilateral modifications NCR made to the arbitration agreement in 2000.

The court overruled NCR's demurrer and denied its motion to compel arbitration, finding the ACT policy to be procedurally unconscionable due to the inequality of bargaining power between NCR and Fitz, and substantively unconscionable because (1) the policy did not allow for adequate discovery; and (2) it required employees to arbitrate wrongful termination claims but exempted NCR from having to arbitrate claims it had against employees.

On appeal, NCR has not renewed its claim that Fitz waived her right to pursue her claims by failing to exhaust the arbitration remedies. NCR asserts that (1) the arbitration agreement met the minimum requirements for arbitration of discrimination claims; (2) the arbitration agreement was not procedurally unconscionable; and (3) the agreement was not substantively unconscionable. NCR further asserts that even if some clauses in the arbitration agreement were unconscionable, the court should have severed them from the agreement and enforced the remaining terms. We reject NCR's contentions and affirm the court's order denying NCR's motion to compel arbitration.

## FACTUAL BACKGROUND

Fitz began her tenure as an employee with NCR in March 1981. In 1996 NCR enacted the ACT policy. The policy set forth a three-stage employee-related dispute resolution process that required disputes that could not be resolved by internal mechanisms to be arbitrated by a neutral private party rather than litigated in the courts. The arbitration provision of the ACT policy provided that: "Except as modified by [the] policy, arbitration hearings [were to] be conducted in accordance with the . . . rules [of the American Arbitration Association (AAA)]."

NCR sent its employees a brochure outlining the ACT policy in September 1996. A letter accompanying the brochure informed employees that the new policy would be used to settle concerns over almost anything at work, ranging from disagreements over assignments to perceived discriminatory treatment. NCR did not give employees a chance to negotiate the terms of the ACT policy. Employees were deemed to have agreed to its terms not by signing the agreement but by continuing to work for NCR one month after the company sent employees the brochure or by accepting any transfers, promotions, merit increases, bonuses or any other benefits of employment.

At its inception in 1996, the policy required all arbitration hearings to be conducted by the AAA and included a process by which both employer and employee participated in selection of individual arbitrators. The policy granted arbitrators the authority to award compensatory and punitive damages, as well as order reinstatement. It also required the employee and the company to share the cost of arbitration unless the arbitrator ruled entirely in

favor of the employee, in which case the company would be responsible for paying both filing fees and arbitrator's fees.

NCR amended the terms of the ACT policy in 2000 in an effort to comply with the requirements for arbitrating discrimination claims as set forth by the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*). The policy amendments applicable to NCR's California employees were posted on the company Intranet, which was available to employees with access to an Internet connection. The new terms eliminated the fee-splitting provision of the 1996 ACT policy, specified that the arbitrator's decision must be in writing, and expressly included the award of attorneys fees as a potential remedy.

Both the original and amended ACT policy limited discovery as follows: "To prepare for the arbitration hearing, both NCR and the employee have the right to *take the sworn deposition statements of two individuals* and, in addition, any expert witnesses expected to testify at the hearing. All documents to be used as exhibits and a list of all potential witnesses will be exchanged at least two weeks in advance of the hearing. *No other 'discovery' (i.e., depositions or demands for documents/information) will be permitted unless the arbitrator finds a compelling need to allow it.* In determining whether a compelling need exists, the arbitrator will balance the interests of fairness and expediency; the arbitrator will only override the goal of achieving a prompt and inexpensive resolution to the dispute if *a fair hearing is impossible without additional discovery.*" (Italics added.)

Additionally, the ACT policy exempted certain types of claims. The ACT policy was not to be used "to resolve disputes over confidentiality/non-compete agreements or intellectual property rights." The policy also did not require arbitration of disputes arising from workers' compensation or unemployment insurance claims and did not preclude employees who believed they had been discriminated against or deprived of their rights in violations of federal or state law from filing a charge with the appropriate state or federal agency.

## PROCEDURAL BACKGROUND

In December 2001, NCR terminated Fitz's 20-year employment with the company as part of a reduction in force. A year later, Fitz filed a complaint against NCR alleging age discrimination in violation of the Fair Employment and Housing Act (FEHA), Government Code section 12940 et seq., violation of public policy, breach of implied contract, breach of the covenant of good faith and fair dealing, and fraud.

NCR demurred to the complaint, requesting that the court either find that Fitz had waived her right to pursue her claims by failing to exhaust the arbitration remedies or issue an order staying the litigation and compelling arbitration in accordance with the terms of the ACT policy. NCR argued the policy was not substantively unconscionable and was, therefore, enforceable.

Fitz opposed the demurrer and motion to compel arbitration, arguing that the arbitration agreement was unenforceable because she did not enter into it voluntarily and its terms unfairly compelled arbitration of the claims employees were most likely to bring against NCR, while exempting from arbitration the claims NCR was most likely to bring against its employees. Fitz argued that the ACT policy improperly gave arbitrators discretion in awarding attorney fees and contained discovery provisions that unfairly benefited NCR and disfavored employees who did not have the same ready access to evidence as the employer. Additionally, Fitz alleged disparate treatment in that NCR discriminated against her based on age and favored younger workers as a means of reducing payroll costs.

In February 2003, the court issued a tentative ruling that found the ACT policy's arbitration provisions unenforceable as being both procedurally and substantively unconscionable. The court found the policy to be procedurally unconscionable due to the inequality of bargaining power between NCR and employees, which resulted in Fitz lacking any meaningful choice in deciding whether to accept the terms of arbitration. The court found the policy to be substantively unconscionable because (1) it lacked adequate discovery provisions; and (2) it lacked mutuality since the policy required employee-related complaints, such as allegations of discrimination, to go to arbitration, while exempting employer-related complaints, such as disputes over intellectual property and confidentiality agreements.

At the hearing, the court found NCR had reduced its concerns about the ACT policy's lack of mutuality but that the arbitration agreement was still substantively unconscionable because it did not provide for adequate discovery. The court stated: "I think counsel for the defense has convinced me that [the ACT policy] is probably far more mutual than at first blush. I still think that there is more of interest to the employer that goes to court and more of interest to the employee that goes to arbitration. But I think counsel for the defense has effectively minimized that argument in my mind. But what I remain concerned with and what has not been minimized in my mind is the . . . lack of any decent discovery process. When you give two depositions and everything else is up to an arbitrator as far as the entire category of written discovery, I believe that there is very little that can be successfully discovered when you,

in the beginning, take away all written discovery and force the issue to an arbiter to decide if any written discovery is going to be allowed."

Nevertheless, following oral argument, the court upheld its tentative ruling in its entirety.

## DISCUSSION

### I. *STANDARD OF REVIEW*

"The determination of the validity of an arbitration clause, which may be made only 'upon such grounds as exist for the revocation of any contract' [citation], 'is solely a judicial function unless it turns upon the credibility of extrinsic evidence; accordingly, an appellate court is not bound by a trial court's construction of a contract based solely upon the terms of the instrument without the aid of evidence.' [Citation.]" (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1527 [60 Cal.Rptr.2d 138], fn. omitted (*Stirlen*).) Thus, in cases such as this, in which extrinsic evidence is not disputed, " '[d]eterminations of arbitrability, like the interpretation of any contractual provision, are subject to de novo review.' [Citation.]" (*Ibid.,* italics omitted, fn. omitted.)

### II. *GENERAL PRINCIPLES OF LAW*

■ Arbitration agreements permit parties to voluntarily submit their disputes for resolution outside of a judicial forum and are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) California law favors the enforcement of arbitration agreements and any "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.]" (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251]; see also *Armendariz, supra,* 24 Cal.4th at p. 97.) Nevertheless, pursuant to "general contract law principles," California courts may invalidate arbitration agreements when they contain provisions that are "unconscionable or contrary to public policy." (*Armendariz, supra,* 24 Cal.4th at p. 99.)

■ There are three steps in reviewing the validity of arbitration agreements. The first step involves identifying "whether the agreement implicates public or private rights." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 651–652 [9 Cal.Rptr.3d 422] (*Abramson*).) Public rights are those that affect " 'society at large' rather than the individual" and include discrimination claims under FEHA. (*Little v. Auto Stiegler, Inc.* (2003) 29

Cal.4th 1064, 1077 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*); see also *Armendariz, supra*, 24 Cal.4th at p. 100.)

The second step is to apply the enforceability standards applicable to those rights. "Where the plaintiff's claims arise from unwaivable public rights, whether statutory or nonstatutory, the arbitration agreement must satisfy the minimum requirements set forth in *Armendariz*." (*Abramson, supra*, 115 Cal.App.4th at p. 652.) "Where the plaintiff asserts private rights rather than (or in addition to) unwaivable public rights, the agreement to arbitrate those claims is tested only against conscionability standards." (*Ibid.*)

If the court finds that the arbitration provisions fail either of these standards, the third step is to determine whether the offending provisions can be excised from the agreement to arbitrate or whether the provisions so permeate the agreement as to render it void in its entirety. (*Abramson, supra*, 115 Cal.App.4th at p. 652; see also *Armendariz, supra*, 24 Cal.4th at pp. 124–125.)

*Arbitration of Public Rights*

■ Fitz's claims invoke public and private rights, both of which may be the subject of arbitration. However, the law affords greater deference to public rights. " 'Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.' [Citations.]" (*Armendariz, supra*, 24 Cal.4th 83 at p. 100.) Public rights are designed to protect the public interest, not just the individual, and therefore cannot be contravened by private agreement. (*Little, supra*, 29 Cal.4th at p. 1077.)

■ The California Supreme Court has stated that an arbitration agreement between employer and employee cannot be made to serve as a vehicle for the waiver of statutory rights. (*Armendariz, supra*, 24 Cal.4th at p. 101.) Furthermore, there is no need to "distinguish" between public rights derived from statute or common law when "arbitration agreements . . . harbor terms, conditions and practices that undermine the vindication of unwaivable rights." (*Little, supra*, 29 Cal.4th at p. 1079.)

■ In order to ensure that mandatory arbitration agreements are not used to curtail an employee's public rights, the California Supreme Court in *Armendariz* set forth five minimum requirements (the *Armendariz* requirements). Arbitration agreements in the employer-employee context must provide for: (1) neutral arbitrators, (2) more than minimal discovery, (3) a written award, (4) all types of relief that would otherwise be available in court, and (5) no additional costs for the employee beyond what the employee

would incur if he or she were bringing the claim in court. (*Armendariz, supra*, 24 Cal.4th at pp. 102, 110–111, citing *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 323 U.S. App. D.C. 133 [105 F.3d 1465, 1482]; see also *Little, supra*, 29 Cal.4th at p. 1081.)

The *Armendariz* requirements are an application of general state law contract principles regarding the unwaivability of public rights in the arbitration context. (*Little, supra*, 29 Cal.4th at p. 1079.) Therefore, to be enforceable, an agreement to arbitrate public rights must satisfy the *Armendariz* requirements. Additionally, such an agreement must be conscionable. "If agreements to arbitrate claims arising from ordinary private rights must meet conscionability standards, then certainly those that affect revered public values warrant the same consideration." (*Abramson, supra*, 115 Cal.App.4th at p. 655.)

*Unconscionability*

■ Agreements to arbitrate may be invalidated if they are found to be unconscionable. (Civ. Code, § 1670.5, subd. (a); see *Armendariz, supra*, 24 Cal.4th at pp. 113–114.) Often, the first step in the unconscionability analysis is to determine whether the contract is one of adhesion. (*Armendariz, supra*, 24 Cal.4th at p. 113.) Adhesive contracts are those where a party of superior bargaining strength drafts the contract and imposes its terms in a take-it or leave-it manner. If the contract is found to be adhesive, the court then determines whether other factors limit its enforceability under established legal principles. (*Ibid.*)

■ The doctrine of unconscionability contains two components: procedural unconscionability and substantive unconscionability. Procedural unconscionability focuses on "oppression" or "surprise" due to unequal bargaining power. (*Armendariz, supra*, 24 Cal.4th at p. 114.) The procedural element generally takes the form of an adhesion contract, which " 'imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Id.* at p. 113, quoting *Neal v. State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) Substantive unconscionability, on the other hand, focuses on overly harsh or one-sided results. (*Armendariz, supra*, 24 Cal.4th at p. 114.) Substantively unconscionable terms may "generally be described as unfairly one-sided." (*Little, supra*, 29 Cal.4th at p. 1071.) For example, an agreement may lack "a modicum of bilaterality" and therefore be unconscionable if the agreement requires "arbitration only for the claims of the weaker party but a choice · of forums for the claims of the stronger party." (*Armendariz, supra*, 24 Cal.4th at p. 119.)

■ Both procedural and substantive elements of unconscionability must be present for a court to refuse to enforce an arbitration agreement. (*Armendariz, supra*, 24 Cal.4th at p. 114.) However, both elements need not be present in the same degree. Generally a sliding scale approach is taken; that is, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Ibid.*)

*Severance*

■ Civil Code section 1670.5 permits a court to determine that only a portion of a contract is unconscionable and to delete or amend that portion to make the remainder of the contract enforceable: "[T]he court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).)

■ In *Armendariz*, the Supreme Court held that Civil Code section 1670.5 gives courts discretion to determine whether to sever or restrict an unconscionable provision or refuse to enforce an arbitration agreement in its entirety. (*Armendariz, supra*, 24 Cal.4th at p. 122.) In deciding whether to sever out offending terms or refuse to enforce the agreement as a whole, "[t]he overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.] Moreover, courts must have the *capacity* to cure the unlawful contract through severance or restriction of the offending clause, which . . . is not invariably the case." (*Id.* at p. 124.)

The Supreme Court found two factors present in *Armendariz* that led it to conclude that severance of the unlawful provisions of the arbitration agreement was inappropriate in that case. First, the arbitration agreement contained more than one unlawful clause. Given the two unlawful provisions, an unlawful damages provision and an unconscionably unilateral arbitration clause, the trial court did not abuse its discretion in concluding that the arbitration agreement was "permeated" by an unlawful purpose, and therefore unenforceable in its entirety. (*Armendariz, supra*, 24 Cal.4th at p. 124.) Second, the high court could identify no single provision that it could strike or restrict in order to remove "the unconscionable taint from the agreement." (*Id.* at pp. 124–125.)

Severance of the unconscionable aspects of the *Armendariz* agreement was not appropriate because "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." (*Armendariz, supra*, 24 Cal.4th at p. 125.) "Civil Code

section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent, limited authority to reform contracts. [Citations.] Because a court is unable to cure this unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation, it must void the entire agreement." (*Ibid.*)

## III. *ANALYSIS*

### A. *Preliminary Considerations*

Fitz argues briefly that our analysis of the arbitration agreement contained in the ACT policy should include the terms that were excised when the ACT policy was amended in 2000. Civil Code section 1670.5, subdivision (a) "instructs that a judicial determination of unconscionability focuses on whether the contract or any of its provisions were 'unconscionable at the time it was made.' " (*O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 281 [132 Cal.Rptr.2d 116].) Fitz, however, fails to provide any authority to support her argument that the 2000 modifications were invalid. At any rate, since we find two provisions of the ACT policy that were not modified to be contra to both standards of conscionability and the minimum requirements of *Armendariz* , we need not decide whether the 2000 amendments were improper.

Furthermore, we find unpersuasive Fitz's argument that the ACT policy fails to provide for all of the types of relief that would otherwise be available in court because it lacks guarantees that the prevailing party will recover attorney fees where required by statute. The policy expressly gives the arbitrator "the same, full authority to order a remedy that a court or jury hearing the case would [have], including . . . attorney fees . . . ."

Fitz's claims involve public rights. Accordingly, we must next analyze whether the arbitration clause meets the applicable *Armendariz* standards.

### B. *Discovery Provisions of the ACT Policy*

 Adequate discovery is indispensable for the vindication of statutory claims. (See *Armendariz, supra,* 24 Cal.4th at p. 104.) " '[A]dequate' discovery does not mean unfettered discovery . . . ." (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184 [116 Cal.Rptr.2d 671] (*Mercuro*).) And parties may "agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05." (*Armendariz, supra,*

24 Cal.4th at pp. 105–106 .) However, arbitration agreements must "ensure minimum standards of fairness" so employees can vindicate their public rights. (*Little, supra,* 29 Cal.4th at p. 1080).

Section 1283.05 of the California Arbitration Act (CAA) provides in part: "After the appointment of the arbitrator . . . , the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures . . . as if the subject matter of the arbitration were pending before a superior court . . . ." (Code Civ. Proc., § 1283.05, subd. (a).)

In permitting less than the full panoply of discovery provided by the CAA, the *Armendariz* court recognized that "a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 106, fn. 11.) However, the court cautioned that the desire for simplicity must be balanced with the need for adequate enforcement of FEHA claims. (*Armendariz, supra,* at p. 106, fn. 11.) Employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review . . . ." (*Id.* at p. 106.)

The ACT policy limits discovery to the sworn deposition statements of two individuals and any expert witnesses expected to testify at the arbitration hearing. The policy also requires all exhibits and a list of potential witnesses to be exchanged at least two weeks in advance of the arbitration hearing. No other discovery is allowed unless the arbitrator finds a compelling need to allow it. The policy requires the arbitrator to limit discovery as specified in the agreement unless the parties can demonstrate that a fair hearing would be *impossible* without additional discovery.

Though NCR contends that the ACT policy's limits on discovery are mutual because they apply to both parties, the curtailment of discovery to only two depositions does not have mutual effect and does not provide Fitz with sufficient discovery to vindicate her rights. "This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses." (*Mercuro, supra,* 96 Cal.App.4th at p. 183; see also *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1332 [83 Cal.Rptr.2d 348] ["Given that [the employer] is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against [the employer]"].)

Any benefit Fitz may derive from the ACT policy's discovery limitations is outweighed by the burden of being limited to only two depositions.[1] Given the complexity of employment disputes, the outcomes of which are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice, it will be the unusual instance where the deposition of two witnesses will be sufficient to present a case. For example, Fitz estimates she will need to depose an estimated eight to 10 witnesses. Under the terms of the ACT policy, she will have to gain approval from the arbitrator to depose all but two of them. She will also have to gain the arbitrator's approval to access any written information regarding NCR's employment practices.

Granting the arbitrator discretion to determine whether additional discovery is necessary, as the ACT policy does, is an inadequate safety valve. In deciding whether to allow additional discovery, the arbitrator is constrained by an "impossibility" standard. NCR attempts to analogize this impossibility standard to the *Armendariz* command that employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim." (*Armendariz, supra,* 24 Cal.4th at p. 106.) However, the arbitration clause does not permit discovery necessary to make a fair hearing possible, as NCR claims. It limits discovery to the depositions of two individuals and expert witnesses. To gain access to any additional information, a party must overcome the ACT policy's constraint on the arbitrator, which permits him to "only override the goal of achieving a prompt and inexpensive resolution to the dispute if a fair hearing is *impossible* without additional discovery." (Italics added.)

The ACT policy places Fitz at a disadvantage in proving her claim while NCR is likely to possess many of the relevant documents and employ many of the relevant witnesses. Fitz will not have access to written documents or the benefit of initial interrogatories when requesting additional information to vindicate her statutory claim. The only way she can gain access to the necessary information to prove the claim is to get permission from the arbitrator for additional discovery. However, the burden the ACT policy imposes on the requesting party is so high and the amount of discovery the policy permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information

---

[1] In *Mercuro, supra,* 96 Cal.App.4th at pages 183–184, the court recognized that limits on discovery in arbitration hearings may "work to the employees' advantage by preventing the employer from burying the employee under a mountain of discovery." The workplace arbitration agreement in the *Mercuro* case permitted up to 30 discovery requests. Without evidence showing how the discovery provisions were applied, the *Mercuro* court was unwilling to state that a cap of 30 discovery requests would necessarily prevent the employee from vindicating his statutory rights. (*Ibid.*)

to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery.[2]

NCR asserts that the adequacy of the discovery provisions in an arbitration agreement is a nonissue. For this proposition, NCR cites *Armendariz* where the court stated "that when parties agree to arbitrate statutory claims, they also implicitly agree, *absent express language to the contrary*, to such procedures as are necessary to vindicate that claim." (*Armendariz, supra,* 24 Cal.4th at p. 106, citing *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086–1087 [90 Cal.Rptr.2d 334, 988 P.2d 67], italics added.) The *Armendariz* court held that by incorporating the CAA and agreeing to arbitrate a FEHA claim, the employer had already impliedly consented to sufficient discovery. "Therefore, lack of discovery is not grounds for holding a FEHA claim inarbitrable." (*Armendariz, supra,* 24 Cal.4th at p. 106.)

The present case is distinguishable from *Armendariz.* In *Armendariz* the employer had imposed on its employees an arbitration agreement that by reference incorporated all the rules set forth in the CAA. (*Armendariz, supra,* 24 Cal.4th at p. 105.) The ACT policy does not incorporate the CAA, which grants parties essentially the same discovery "rights, remedies, and procedures . . . as if the subject matter of the arbitration were pending before a superior court . . . ." (Code Civ. Proc., § 1283.05, subd. (a).) Instead, it incorporates the rules of the American Arbitration Association (AAA).[3] However, NCR chose to modify the AAA's rules of discovery to its advantage. By limiting discovery to two depositions, NCR included express language in the ACT policy that is contrary to the assumption in *Armendariz* "that when parties agree to arbitrate statutory claims, they also implicitly agree" to procedures necessary for vindication of the claim.

---

[2] In some cases an imbalance of information between the employer and the employee may itself provide "the *good cause* the employee needs in order to exceed the 30 discovery requests limit." (*Mercuro, supra,* 96 Cal.App.4th at p. 183, italics added.) The workplace arbitration agreement at issue in *Mercuro* provided that " 'disputes concerning discovery shall be resolved by the arbitrator, with a presumption against increasing the aggregate limit on requests' " and that " 'additional discovery requests shall be granted only upon a showing of good cause.' " (*Id.* at p. 182.) The ACT policy imposes a higher burden—an arbitrator must find that a "fair hearing is impossible without additional discovery." Certainly, a dramatic disparity of information between employer and employee may constitute a "compelling" reason to exceed the discovery limit in the ACT policy, but when employees are only allowed to depose two witnesses in an attempt to establish that need, they are not given sufficient opportunity to vindicate their statutory claims.

[3] Rule 7 of the National Rules for the Resolution of Employment Disputes promulgated by the AAA (AAA rules) grants the arbitrator authority to order "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (See *O'Hare v. Municipal Resource Consultants, supra,* 107 Cal.App.4th at p. 281.)

Fitz alleged disparate treatment in that NCR discriminated against her based on age and favored younger workers as a means of reducing payroll costs. "It 'would be *impossible*' for employees to prove disparate treatment 'without the opportunity to obtain from [employers] statistical information about the employment practice in question.' " *Stirlen, supra*, 51 Cal.App.4th at pp. 1537–1538, quoting Bales, *Compulsory Arbitration of Employment Claims: A Practical Guide to Designing and Implementing Enforceable Agreements* (1995) 47 Baylor L.Rev. 591, 608–609, italics added.) However, we do not believe that an employee should be forced to demonstrate this impossibility to an arbitrator before being granted access to the type of discovery that is necessary for a fair opportunity to vindicate her claim.

"The object of the *Armendariz* requirements . . . is not to compel the substitution of adjudication for arbitration, but rather to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum." (*Little, supra*, 29 Cal.4th at p. 1080.) ■ The limitations on discovery imposed by the ACT policy run afoul of these minimum standards and fail to ensure that Fitz is entitled to discovery sufficient to adequately arbitrate her claims.

## C. *Applicability of the AAA*

We requested additional briefing regarding the ACT policy's incorporation of the AAA rules and whether the AAA's rules, rule 1 had any impact on the ACT policy's discovery provisions. That section states: "If a party establishes that an adverse material inconsistency exists between the arbitration agreement and [the AAA] rules, the arbitrator shall apply [AAA] rules."[4]

The applicable AAA discovery rule reads as follows: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (AAA rules, rule 7.)

NCR asserts that as the ACT policy permits discovery in the same manner as the AAA rules, there is no material inconsistency between the two. In the

---

[4] We may properly take judicial notice of the AAA's rules in resolving this dispute. "Matters that cannot be brought before the appellate court through the record on appeal (initially or by augmentation) may still be considered on appeal by judicial notice." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2003) § 5:149, p. 5-42 (rev. # 1, 2003).)

alternative, NCR contends that if an adverse material inconsistency is found, the AAA rules would take precedent over the ACT policy. We reject these contentions.

First, the ACT policy limits discovery to two depositions and then permits the arbitrator to grant additional discovery only if a compelling need is shown. The AAA rule, on the other hand, imposes no initial limitation on discovery. It states that the "arbitrator shall have the authority to order such discovery . . . as the arbitrator considers necessary . . . ." (AAA rules, rule 7.) The ACT policy's express limitation on discovery, and its requirement that party demonstrate a compelling need before being permitted additional discovery, is not the same as the AAA's blanket rule, permitting the arbitrator to order such discovery as he or she deems necessary. There is, therefore, an adverse material inconsistency between the two discovery provisions.

Second, the adverse material inconsistency cannot make the AAA discovery provisions trump the limits on discovery that NCR deliberately established in the ACT policy. A similar issue arose in *O'Hare v. Municipal Resource Consultants, supra,* 107 Cal.App.4th at pages 280–282, which also involved an employee's allegation of age discrimination against a former employer. The arbitration agreement at issue forbade prearbitration discovery but also incorporated the rules of the AAA. (*Id.* at pp. 279–280.) Conceding that the agreement's denial of discovery failed to meet the requirements of *Armendariz* entitling employees to discovery sufficient to adequately arbitrate their statutory claims, the employer argued that the AAA rules trumped the arbitration agreement's ban on prearbitration discovery. Therefore, according to the employer, the agreement was enforceable and in keeping with the discovery requirements of *Armendariz* because the AAA rules contain measures that ensure adequate discovery. (*Id.* at p. 280.)

The Court of Appeal did not rule on the discrete issue, stating to do so was unnecessary because other provisions of the arbitration agreement rendered the agreement substantively unconscionable and unenforceable. (*O'Hare v. Municipal Resource Consultants, supra,* 107 Cal.App.4th at p. 282.) Nevertheless, the court indicated that the defendant's argument did not appear meritorious. (*Id.* at pp. 281–282 [The employer's argument was deemed "nothing more than an attempt to make an end run around the legislative direction to evaluate the contract based upon its terms at the time of execution. . . . [The employer] cite[d] no authority for the proposition it should be relieved of the effect of an unlawful provision it inserted in the arbitration provision because of the serendipity that the AAA rules changed since the employment contract was executed"].)

In *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402 [7 Cal.Rptr.3d 418], the court reviewed a contract for work related to maintenance of a backyard pool. The work contract contained an arbitration provision incorporating the arbitration rules of the Better Business Bureau (BBB). (*Id.* at p. 1405.) The court refused to enforce the arbitration clause because: (1) the BBB rules were not attached to the work contract, which forced the customer to go to another source to learn that the arbitration agreement curtailed his ability to receive full relief and (2) the clause failed to state whether arbitration would be conducted under the BBB's rules as of the time of contracting or at the time of arbitration. (*Id.* at pp. 1406–1407.) "Thus even a customer who takes the trouble to check the Better Business Bureau arbitration rules before signing the contract may be in for a preliminary legal battle in the event that [BBB] arbitration rules were to become substantively less favorable in the interim. Before the main battle commenced in arbitration, there would be a preliminary fight over which set of arbitration rules governed something which, at the very least, would add to the customer's legal expense." (*Id.* at p. 1407.)

NCR's ACT policy similarly incorporates arbitration rules that were not attached and requires the other party to go to another source in order to learn the full ramifications of the arbitration agreement. The policy poses the potential for preliminary legal battles, as well, by failing to address whether modified AAA rules or only those AAA rules in effect at the time the policy was implemented apply to employment disputes. Additionally, allowing the rules of the AAA to trump NCR's modification would fail to provide employees with adequate notice of the applicable rules of discovery. To compound matters, there is also the very real potential for disparate enforcement of the ACT policy terms, since arbitrators may disagree on whether the policy's limits on discovery are materially inconsistent with AAA rules. NCR deliberately replaced the AAA's discovery provision with a more restrictive one, and in so doing failed to ensure that employees are entitled to discovery sufficient to adequately arbitrate their claims. NCR should not be relieved of the effect of an unlawful provision it inserted in the ACT policy due to the serendipity that the AAA rules provide otherwise. (See *O'Hare v. Municipal Resource Consultants, supra,* 107 Cal.App.4th at pp. 281–282.)

D. *Unconscionability and Mutuality*

1. *Procedural unconscionability*

"[P]rocedural unconscionability focuses on the oppressiveness of the stronger party's conduct." (*Mercuro, supra,* 96 Cal.App.4th at p. 174, fn. omitted.) "The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. [Citations.]" (*Kinney v. United*

*HealthCare Services, Inc., supra*, 70 Cal.App.4th at pp. 1327, 1329 [holding that an employee had no opportunity to negotiate terms of an arbitration agreement when the employer required the employee to acknowledge consent to its terms as a condition of continued employment].)

"The procedural element of an unconscionable contract generally takes the form of a contract of adhesion . . . ." (*Little, supra,* 29 Cal.4th at p. 1071.) Even if a party is aware of some of the contractual terms, procedural unconscionability may still be found. When a contract is oppressive, awareness of its terms does not preclude a finding that the arbitration agreement is unenforceable. (*Kinney v. United HealthCare Services, Inc., supra,* 70 Cal.App.4th at p. 1330.)

" '[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' " (*Little, supra,* 29 Cal.4th at p. 1071, quoting *Armendariz, supra,* 24 Cal.4th at p. 115.)

Fitz had no opportunity to negotiate the terms of the ACT policy. Nor did Fitz have a meaningful choice. She could either quit her job of 14 years or agree to the terms by merely remaining employed with NCR for one month after the company informed employees of the policy change. Few employees are in a position to forfeit a job and the benefits they have accrued for more than a decade solely to avoid the arbitration terms that are forced upon them by their employer. The ACT policy was presented in a take-it or leave-it manner, and Fitz lacked equal bargaining power. The facts of this case present a high degree of oppressiveness and, therefore, the ACT policy is procedurally unconscionable.

NCR concedes that the ACT policy constitutes a contract of adhesion but argues that it does not contain the element of surprise because it was "openly and thoroughly described . . . to NCR's employees before it became effective" and did not contain terms "hidden in a prolix printed form." We find this argument unpersuasive.

NCR sent its employees a brochure explaining the ACT policy, but not a copy of the policy itself. The brochure was described as a useful overview and encouraged employees to "take the time to read the actual policy," which could be obtained through NCR management and its department of human resources. The brochure forewarned employees that NCR had carved out "limited" exemptions to the arbitration agreement for which arbitration would not apply to resolve employment disputes, but those exemptions were buried

in the fine print of a footnote. There was no information in the brochure disclosing the ACT policy's substantial curtailment of employees' rights to prehearing discovery.

NCR cites *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416 [100 Cal.Rptr.2d 818], for the proposition that an employee's acceptance of an arbitration agreement may be implied in fact where "the employee's continued employment constitutes her acceptance of an agreement proposed by her employer [citations]." (*Id.* at p. 420.) *Craig* is distinguishable from the present case. In *Craig* the court was called upon to decide whether there was sufficient evidence to prove the *existence* of an agreement to arbitrate. (*Ibid.*) Fitz does not question the existence of the arbitration agreement with NCR. She asserts that the agreement is unconscionable and fails to meet the *Armendariz* standards. The *Craig* decision is therefore inapplicable.

### 2. *Substantive unconscionability*

Substantive unconscionability focuses on overly harsh or one-sided results. (See *Armendariz, supra*, 24 Cal.4th at p. 114.) "In assessing substantive unconscionability, the paramount consideration is mutuality." (*Abramson, supra*, 115 Cal.App.4th at p. 664.) This does not mean that parties may not choose to exclude particular types of claims from the terms of arbitration. However, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Armendariz, supra*, 24 Cal.4th at p. 120.)

An adhesive contract imposed on employees must demonstrate a "modicum of bilaterality." (*Armendariz, supra*, 24 Cal.4th at p. 116.) "If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration." (*Id.* at p. 118.) Nevertheless, a contracting party with superior bargaining strength may provide "extra protection" for itself within the terms of the arbitration agreement if "business realities" create a special need for the advantage. (*Id.* at p. 117.) The "business realities," creating the special need, must be explained in the terms of the contract or factually established. (*Armendariz, supra*, 24 Cal.4th at p. 117, quoting *Stirlen, supra*, 51 Cal.App.4th at p. 1536.)

In *Stirlen, supra*, 51 Cal.App.4th 1519, an employer in its arbitration agreement with an employee reserved the right to bring equitable claims for patent infringement and improper use of confidential information in state or federal court. (*Id.* at p. 1528.) The *Stirlen* court held that the "unilateral right

to litigate rather than arbitrate claims" cannot be justified by a need for provisional remedies because Code of Civil Procedure section 1281.8, subdivision (b) addresses such concerns. (*Stirlen, supra,* at p. 1537.) The statute permits parties to an arbitration agreement to seek provisional relief if the award the party seeks " 'may be rendered ineffectual' " without it.[5] (*Stirlen, supra,* at p. 1537.) Additionally, the *Stirlen* court held that justification for unilateral provisions, exempting particular employer-based claims from arbitration, is lacking even if the employer demonstrates that its "legitimate dispute resolution needs could not always be met through arbitration, for that is also true with respect to employee claims." (*Ibid.*)

An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party. (*Armendariz, supra,* 24 Cal.4th at p. 119; *Mercuro, supra,* 96 Cal.App.4th at p. 176.) The *Mercuro* court found that an arbitration agreement that covered "some employment-related claims including employment discrimination but excluded others such as . . . equitable relief for unfair competition, unauthorized disclosure of trade secrets or violation of intellectual property rights" to be unfairly one-sided in favor of the employer. (*Mercuro, supra,* 96 Cal.App.4th at p. 172.) The court noted that an employee terminated for stealing trade secrets would have to arbitrate his wrongful termination claim but the employer could avoid arbitration by simply requesting injunctive or declaratory relief. (*Id.* at p. 176.)

The *Mercuro* agreement compelled "arbitration of the claims employees are most likely to bring" but exempted "from arbitration the claims [the employer] is most likely to bring against its employees." (*Mercuro, supra,* 96 Cal.App.4th at p. 176.) The fact that the agreement also exempted employees' claims for workers' compensation and unemployment benefits did not "turn what [was] essentially a unilateral arbitration agreement into a bilateral one" because such complaints are governed by their own adjudicatory systems and are not "a proper subject matter for arbitration." (*Ibid.*)

NCR asserts that the ACT policy is "completely bilateral" because the policy does not carve out particular types of claims where employees are

---

[5] Code of Civil Procedure section 1281.8, subdivision (b) provides: "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. The application shall be accompanied by a complaint or by copies of the demand for arbitration and any response thereto. If accompanied by a complaint, the application shall also be accompanied by a statement stating whether the party is or is not reserving the party's right to arbitration."

required to arbitrate, but the company is permitted to seek redress for the same claim in a judicial forum. In particular, NCR states that both the company and Fitz may submit disputes regarding noncompete agreements and intellectual property rights to the courts. Though NCR cites cases where employees have filed actions against employers over noncompete agreements and intellectual property claims, it is far more often the case that employers, not employees, will file such claims. Furthermore, the ACT policy coverage statement, while not an exclusive list, only includes the types of complaints that are predominately, if not solely, of concern to employees.[6]

The ACT policy is unfairly one-sided because it compels arbitration of the claims more likely to be brought by Fitz, the weaker party, but exempts from arbitration the types of claims that are more likely to be brought by NCR, the stronger party. NCR argues that both employer and employee are bound by the terms of the agreement, noting that the company must arbitrate claims against the employee for embezzlement and theft, and the employee must arbitrate claims for employment discrimination and wrongful termination. However, "[t]he mandatory arbitration requirement can only realistically be seen as applying primarily if not exclusively to claims arising out of the termination of employment, which are virtually certain to be filed against, not by, [the employer]." (*Stirlen, supra,* 51 Cal.App.4th at pp. 1540–1541.) A substantial portion of the claims NCR is most likely to initiate against employees, "such as claims that an employee violated a non-competition agreement or divulged confidential information need not be arbitrated." (*Id.* at p. 1541.)

The ACT policy fails to overcome the *Armendariz* threshold, which states that arbitration agreements imposed in adhesive contexts lack basic fairness if they require one party but not the other to arbitrate all claims arising out of the same transaction or occurrence. (*Armendariz, supra,* 24 Cal.4th at p. 120.) For example, in a wrongful termination dispute where the employee claims age discrimination and NCR argues the employee was fired for divulging trade secrets to a competitor, the employee is required to arbitrate her claim while NCR is permitted to seek judicial review.

NCR asserts that it has the necessary business justification for excepting trade secret, noncompetition and intellectual property disputes from the ACT

---

[6] The ACT policy states: "The ACT dispute resolution process can be used to address most workplace concerns, including, but not limited to, concerns involving: [¶] *the interpretation or application* of a policy or work rule[;] [¶] a work assignment[;] [¶] overtime assignments[;] [¶] transfer or promotion decisions[;] [¶] a performance appraisal[;] [¶] a performance improvement plan[;] [¶] a merit increase award[;] [¶] disciplinary actions (as such as a warning or suspension)[;] [¶] involuntary termination[;] [¶] treatment that is perceived as unequal or discriminatory[;] [¶] any form of perceived harassment (e.g., sexual, racial, ethnic, religious, sexual orientation)."

policy. Arbitration, the company states, does not provide the "swift and effective relief" necessary when trade secrets, unfair competition and intellectual property issues are in dispute. For example, NCR states, arbitration does not provide a quick means necessary to obtain restraining orders and prevent employees from disclosing of trade secrets. This argument ignores Code of Civil Procedure section ·1281.8, which permits parties to an arbitration agreement to seek provisional relief, such as temporary restraining orders, when the award the party seeks "may be rendered ineffectual" without it. (*Stirlen, supra,* 51 Cal.App.4th at p. 1537.)

NCR also contends that it has 30,000 employees across various states and that a bright line exception for confidentiality and intellectual property disputes is necessary because it would be impractical to have state-by-state provisions regarding which claims would be subject to arbitration. However, NCR's concern that arbitration may not always meet its legitimate dispute resolution needs is not a proper business justification for the exception. (See *Stirlen, supra*, 51 Cal.App.4th at p. 1537.) Given the safety valve that the Code of Civil Procedure provides for quick provisional remedies, NCR's justification for excepting intellectual property and trade disputes from the ACT policy is not "grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum" and is therefore unconscionable. (*Armendariz, supra*, 24 Cal.4th at p. 120.)

We have already concluded that the discovery provision in the ACT policy's agreement to arbitrate does not meet the minimum standards set forth in *Armendariz* because the provision does not provide the weaker party with sufficient discovery to vindicate her public claim. "Given our conclusion that this agreement fails to satisfy the requirements of *Armendariz*, we need not consider its conscionability with respect to plaintiff's public rights." (*Abramson, supra*, 115 Cal.App.4th at p. 661.)

E. *Severance*

Since the ACT policy contains discovery limitations contra to the *Armendariz* requirements and is both procedurally and substantively unconscionable because of its lack of mutuality, we now determine whether the offending provisions can be severed from the agreement or whether the ACT policy must be found void in its entirety.

In *Armendariz* the California Supreme Court held that more than one unlawful provision in an arbitration agreement weighs against severance. (*Armendariz, supra*, 24 Cal.4th at p. 124.) The ACT policy contains two unlawful provisions: a limitation on discovery that does not provide the

weaker party with sufficient opportunity to vindicate her claims, and a lack of mutuality whereby the stronger party has exempted from arbitration the very claims it is likely to bring against employees. Moreover, the policy specifically imposes arbitration of the types of claims employees are likely to bring against the employer. These "defects indicate a systematic effort to impose arbitration on an employee not . . . as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Ibid.*) "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." (*Ibid.*; cf. *O'Hare v. Municipal Resource Consultants, supra,* 107 Cal.App.4th at p. 282 ["Severance is permissible only if the unconscionable portion is collateral to the main purpose of the contract"].)

 Furthermore, there is no single provision in the ACT policy that we can "strike or restrict in order to remove the unconscionable taint from the agreement." (*Armendariz, supra,* 24 Cal.4th at pp. 124–125.) Striking the ACT policy exemptions for disputes over confidentiality agreements and intellectual property rights would leave unaddressed the issue of inadequate discovery. Replacing the ACT policy's limitations on discovery with the rules of AAA would be in effect to rewrite the agreement. Courts cannot cure contracts by reformation or augmentation. (*Id.* at p. 125.) "The only way a court can cure a contract's illegality is 'through severance or restriction.' [Citation.] If the taint of illegality cannot be removed by those means, the court 'must void the entire agreement.' " (*Abramson, supra,* 115 Cal.App.4th at p. 660, quoting *Armendariz, supra,* 24 Cal.4th at p. 125.)

Excising the offending provisions of the ACT policy would not be consistent with the reasons for severing objectionable terms as identified by the California Supreme Court. Those reasons include: (1) "conserv[ing] a contractual relationship if to do so would not be condoning an illegal scheme" and (2) "prevent[ing] parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement." (*Armendariz, supra,* 24 Cal.4th at pp. 123–124.)

Now that the parties' employment relationship has ended, the first reason does not apply. "[T]here obviously is no contractual relationship to preserve." (*Abramson, supra,* 115 Cal.App.4th at p. 667.) More importantly, to allow arbitration of Fitz's claim would permit NCR to benefit from the unconscionable agreement it imposed on her. "An employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning,

or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice. [Citation.]" (*Armendariz, supra*, 24 Cal.4th at pp. 124–125, fn. 13.)

Here, the interests of justice are not furthered by severing the ACT policy exemptions and discovery limitations. To compel arbitration of Fitz's claim would grant an undeserved benefit to NCR, which drafted the ACT policy not as an alternative to litigation but as a means to compel arbitration as an inferior forum that works to its advantage.

## DISPOSITION

The order denying NCR's motion to compel arbitration is affirmed.

McIntyre, J., and O'Rourke, J., concurred.