[No. H036242. Sixth Dist. June 21, 2011.]

SHARON ELIZABETH ZULLO, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
INLAND VALLEY PUBLISHING CO., Real Party in Interest.

478

COUNSEL

Pierce & Shearer and Jacquetta May Lannan for Petitioner.

Strazulo Fitzgerald, Dennis D. Strazulo, Sara Wilson and Cody Jaffe for Real Party in Interest.

OPINION

**PREMO, Acting P. J.**—Petitioner Sharon Elizabeth Zullo sued her employer, real party in interest Inland Valley Publishing Co. (Inland), for wrongful termination in violation of the California Fair Employment and Housing Act (Gov. Code, § 12920 et seq.; FEHA). The superior court granted Inland's petition to compel arbitration and stayed the civil proceedings. Petitioner challenged that ruling by way of a petition for writ of mandate. We temporarily stayed the arbitration and issued an order to show cause why relief should not be granted. We now grant the petition and issue the writ.

## I.  *Facts*

Petitioner's complaint states that she began working for Inland, the publisher of a weekly newspaper, in or around 2004. She was promoted to "Account Executive" on September 1, 2009. Her salary was $40,000 per year plus "sales bonuses." Petitioner claims that her direct supervisor discriminated against her on account of her race and national origin and that she was discharged because she complained about the discriminatory treatment.[1]

Inland's petition to compel arbitration was based upon the arbitration policy contained in Inland's employee handbook. Inland maintained that petitioner was given the handbook when she was hired and petitioner signed an acknowledgment of having received a copy of it, the original of which is kept in her personnel file.

The introductory section of the employee handbook states, "Upon joining The Independent [(Inland's weekly newspaper)], you will be given a copy of our employee handbook and asked to complete personnel, payroll and benefit forms. Except as otherwise set forth in individual contracts, the handbook applies to all exempt and nonexempt employees. [¶] The handbook has been prepared for the information and guidance of employees working at The Independent. The handbook is intended to cover the procedures, rules and policies that most often apply to day-to-day work activities. Some of the information will change from time to time since our policies are under constant review and are revised when appropriate. Such changes will be communicated to you in writing in advance of their implementation."

Page 54 of the 58-page employee handbook contains an arbitration policy, which reads in full as follows:

"Any dispute arising out of the termination or alleged termination of any employee's employment, (including, but not limited to, purported violations of statute, claims based on any alleged breach of duty arising out of contract or tort, or any other alleged violation of a statutory, contractual or common law right(s), but excluding workers' compensation and unemployment insurance claims and wage and hour matters within the jurisdiction of the State Labor commissioner) or any claim for discrimination or harassment arising out of any employee's employment, which cannot be resolved through either discussion or mediation, shall be submitted to final and binding arbitration before a neutral arbitrator pursuant to the American Arbitration Association

---

[1] Petitioner's complaint contains what appears to be a factual contradiction in that she alleges that she worked for Inland from 2004 through September 17, 2009, but that her employment was terminated in October 2009. In addition, Inland represents that petitioner was hired in 2008, not 2004. The conflicting dates do not affect our analysis.

Employment Dispute Resolution rules, as may be amended from time to time (attached to this Handbook as Appendix 'A'). Statutes and laws covered by this policy, include, but are not limited to, equal employment opportunity laws (which include claims for age, race, color, disability, medical condition, marital status, religion, sexual orientation, ancestry, national origin, harassment, pregnancy and sex discrimination), the Federal Civil Rights Acts of 1964 and 1991, as amended, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the California Fair Employment Practices Act and California wrongful discharge law.

"Arbitration will be the exclusive means of resolving any dispute described above. No other action will be brought by any employee in any court or other forum except those claims specifically excluded in the arbitration procedures, or as otherwise provided by law. If any dispute should arise, Employee agrees to deliver a written request for arbitration to Janet Armantrout or Joan Seppala within one (1) year of the date the dispute occurred. The request for arbitration shall describe the dispute in sufficient detail to advise the Company of the nature of the dispute, the date when the dispute first arose and the remedies sought. Employees must respond within ten (10) calendar days to each communication regarding the selection of an arbitrator and scheduling of the hearing. If Employee does not file a written request for arbitration within one year of the date of said occurrence or does not respond to any communication about the arbitration proceeding within ten (10) calendar days, such claims will be untimely and therefore barred. The limitations period set forth herein shall not be subject to tolling. Employees shall not have the right to raise any claims, in any forum, arising out of any controversy that is subject to arbitration."

Inland also submitted an acknowledgement of receipt of the handbook, allegedly signed by petitioner, which stated, "I understand and acknowledge that this handbook contains an arbitration policy requiring me to submit any and all disputes described therein to final and binding arbitration and that I cannot pursue such claims before a judge or a jury or in any other forum."

Petitioner challenged the motion to compel arbitration on two grounds. She maintained that the arbitration agreement was unconscionable and, therefore, unenforceable. She also challenged the authenticity of the acknowledgement of receipt Inland submitted in support of its motion. She did not submit a declaration of her own in support of her objections. The superior court rejected the evidentiary challenge and found the agreement was not unconscionable.

## II. Issue and Standard of Review

█ "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins . . ." (Code Civ. Proc., § 1085, subd. (a)) where "there is not a plain, speedy, and adequate remedy, in the ordinary course of law" (*id.*, § 1086). Although mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can be exercised in only one way. (*Hilmer v. Superior Court* (1934) 220 Cal. 71, 73 [29 P.2d 175]; *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

Petitioner argues that under the facts of this case, the superior court was bound to deny Inland's petition to compel. She maintains the arbitration agreement is a contract of adhesion and is unfairly one-sided. She further maintains that the superior court erred in overruling her objection that the acknowledgement of receipt was not properly authenticated.

█ Under Code of Civil Procedure section 1281.2, a court must compel arbitration of a dispute "if it determines that an agreement to arbitrate the controversy exists." In determining whether there is an enforceable agreement to arbitrate a particular dispute, the court must examine and, to a limited extent, construe the underlying agreement. (*United Public Employees v. City and County of San Francisco* (1997) 53 Cal.App.4th 1021, 1025–1026 [62 Cal.Rptr.2d 440].) In so doing, the court applies settled rules for interpreting contracts. And, as with any other contract, interpreting a purported arbitration agreement is solely a judicial function unless it turns upon the credibility of extrinsic evidence. (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1527 [60 Cal.Rptr.2d 138]; *Duffens v. Valenti* (2008) 161 Cal.App.4th 434, 443 [74 Cal.Rptr.3d 311]; *City of Los Angeles v. Superior Court* (2011) 193 Cal.App.4th 1159, 1167 [123 Cal.Rptr.3d 610], review granted July 13, 2011, S192828.) We are concerned here with the language of the arbitration policy, the employee handbook within which it is contained, and the acknowledgement petitioner is alleged to have signed. To the extent there is any extrinsic evidence necessary to the decision, it is not in dispute. Accordingly, our review is de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].)

III. *Discussion*

■ The invalidity of an arbitration agreement may be proved "upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) Unconscionability is one such a ground. (Civ. Code, § 1670.5.)[2]

■ Unconscionability has both procedural and substantive elements. " 'The procedural element focuses on two factors: "oppression" and "surprise." [Citations.] "Oppression" arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice." [Citations.] "Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.' " (*Stirlen v. Supercuts, Inc., supra*, 51 Cal.App.4th at p. 1532, quoting *A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114].) Substantive unconscionability refers to overly harsh or unjustifiable one-sided results. A contract is largely an allocation of risks between the parties. A contractual term is substantively suspect if, viewed at the time the contract was formed, it allocates the risks in an unreasonable or unexpected manner. (*A & M Produce Co. v. FMC Corp., supra*, at p. 487.)

Both forms of unconscionability must be present in order to invalidate a contract for unconscionability but they need not be present in equal parts. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

■ In *Armendariz*, there was little dispute that the arbitration agreement was procedurally unconscionable. "It was imposed on employees as a condition of employment and there was no opportunity to negotiate." (*Armendariz, supra*, 24 Cal.4th at p. 115.) The court noted that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Ibid.*)

---

[2] Civil Code section 1670.5 provides:

"(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

■ The arbitration agreement in *Armendariz* was also substantively unconscionable because it lacked bilaterality; the employee had to arbitrate claims against the employer but the employer was not bound to arbitrate any dispute it might have against the employee. (*Armendariz, supra*, 24 Cal.4th at pp. 114, 119.) *Armendariz* explained that in the employment context arbitration agreements must contain a " 'modicum of bilaterality.' " (*Id.* at p. 117.) "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.' As has been recognized ' "unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." ' (*A & M Produce Co.* [*v. FMC Corp.*], *supra*, 135 Cal.App.3d at p. 487.) If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose." (*Armendariz, supra*, 24 Cal.4th at pp. 117–118, citing *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976 [64 Cal.Rptr.2d 843, 938 P.2d 903].)

Turning to the present matter, we note that as in *Armendariz* there is really no question that the arbitration agreement is procedurally unconscionable in that it is a contract of adhesion. Inland argues that there is no evidence of the circumstances surrounding plaintiff's acceptance of employment and, therefore, no way to tell what was negotiated. But the arbitration policy speaks for itself. It was contained in a handbook along with a host of other policies relating to working hours, time off, business expenses, medical insurance, conduct at work, and similar topics. The new employee is "given" a copy of the handbook, which contains the rules that apply to day-to-day work activities. When the information contained in the handbook changes, those changes "will be communicated" to the employee in advance of their implementation. The acknowledgement of receipt is just that; the employee acknowledges receipt of the handbook and her understanding that the handbook contains an arbitration policy. The plain language of the two documents indicates that the purported agreement was actually an employer policy, implemented like the rest of the policies in the handbook, on a take-it or leave-it basis.

■ The absence of the AAA (American Arbitration Association) arbitration rules adds a bit to the procedural unconscionability. Petitioner cites *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402 [7 Cal.Rptr.3d 418], in which the court refused to enforce an arbitration clause that incorporated by

reference but failed to attach the rules of the Better Business Bureau, which precluded the consumer from obtaining damages. (*Id.* at p. 1405.) Petitioner also cites *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721 [13 Cal.Rptr.3d 88], in which the court found that the failure to attach the AAA rules, which would have trumped the discovery provision contained in the arbitration agreement, made the agreement procedurally unconscionable. (*Ibid.*) Here, we have no evidence of what the unattached rules require so that both cases are inapt in that regard. But *Harper* also noted that it was oppressive to require the party to make an independent inquiry to find the applicable rules in order to fully understand what she was about to sign. (*Harper v. Ultimo, supra,* at p. 1406; see also *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [116 Cal.Rptr.3d 804] [holding, without discussion, that failure to attach arbitration rules added to the procedural unconscionability].) That aspect of unconscionability is present here.[3]

As to substantive unconscionability, the arbitration policy is one-sided and harsh. Inland insists that the policy imposes a mutual obligation to arbitrate but the argument does not square with the language of the policy. Inland is right that the first paragraph expressly applies to *any* dispute arising out of the termination; but disputes "arising out of the termination" of an employee are the very claims that "are virtually certain to be filed against, not by [the employer]." (*Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at pp. 1540–1541.) Indeed, the arbitration policy adds a nonexclusive list of the statutes and laws to which it applies, all of which are of equal employment and nondiscrimination laws. *Employees* bring actions under these laws. Furthermore, what is implicit in the first paragraph of the arbitration policy is explicit in the second, where it states that "[n]o other action will be brought by any employee," that "Employees shall not have the right to raise any claim[]" other than by arbitration, and that "Employee agrees" to make a written request for arbitration within a year of when the dispute arises. And finally, in the acknowledgment of receipt the employee confirms that the handbook contains "an arbitration policy requiring *me* to submit any and all disputes" to arbitration and that "*I* cannot pursue such claims before a judge or a jury . . . ." (Italics added.) (Cf. *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1205 [78 Cal.Rptr.2d 533] [mutual arbitration agreement stated, " 'you and Nautilus agree that you both will submit it exclusively to final and binding arbitration.' "].) There is nothing about the policy to support Inland's contention that it would be bound to arbitrate any claim it might have against an employee.

---

[3] If, as both sides admit, the AAA does not publish rules under the title to which the arbitration agreement refers, the discrepancy would add to the oppressive nature of the agreement.

The instant policy also lacks mutuality in that it requires the employee, but not the employer, to respond to any communications regarding the arbitration proceedings within 10 days or forfeit her claim. This requirement is indisputably one-sided and unfairly prejudicial to petitioner. Under the plain terms of the arbitration policy Inland may delay the selection of an arbitrator, or any other action that might be needed to move the process along, without risking a penalty of any kind. The employee, on the other hand, is bound to respond to any communication within 10 days or lose her claim altogether. A fair agreement would impose the same time constraints upon both parties.

Absent reasonable justification for such one-sided terms, "arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." (*Armendariz, supra,* 24 Cal.4th at p. 118.) If an employer does have reasonable justification for a one-sided arrangement, the lack of mutuality would not be unconscionable. But without such justification, "we must assume that it is." (*Id.* at p. 120.) Inland offers no justification for the lack of mutuality. Indeed, Inland effectively concedes the unconscionability of the 10-day time limit by arguing that we should presume that the trial court struck it.

Inland argues that petitioner has failed to demonstrate how she would be injured by being required to arbitrate her claims. According to Inland, petitioner's subjective distrust of the arbitration process is not a sufficient showing of harm. That is decidedly not the point. If the arbitration agreement is unenforceable, the agreement imposes no obligation that a court can enforce, period. (Cf. Civ. Code, § 1549; Code Civ. Proc., §§ 25, 26, 30.)

In sum, Inland's arbitration policy is a contract of adhesion, fails to give adequate notice of the arbitration rules that will apply, and allows Inland the full range of remedies and forums for resolution of whatever claims it might have against petitioner while limiting petitioner to binding arbitration of her claims against Inland. It also imposes strict time limits within which petitioner must respond to any arbitration-related communication without imposing similar requirements on Inland.[4] Accordingly, the arbitration agreement is unconscionable and cannot be enforced as written.

Under Civil Code section 1670.5, subdivision (a), a court may either refuse to enforce an entire agreement if the agreement is " 'permeated' " by unconscionability (*Armendariz, supra,* 24 Cal.4th at p. 122) or, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or

---

[4] Although the parties do not mention it, the arbitration policy also states that the limitations period shall not be subject to tolling, a provision that might also contribute to substantive unconscionability. (See Gov. Code, § 12965, subds. (d), (e).)

restriction, then such severance and restriction are appropriate" (*id.* at p. 124). The illegality cannot be excised here. Striking the forfeiture provision would not cure the other problem, which is that the agreement applies only to the petitioner. There is no single provision we can strike in order to remove that unconscionable taint. Indeed, "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Ibid.*) In order to neutralize the multiple defects of the instant agreement we would have to add terms and that we are not authorized to do. (*Id.* at pp. 124-125; see also Civ. Code, § 1670.5.)[5]

## IV. *Disposition*

Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 9, 2010, granting the petition of real party in interest to compel arbitration and stay court proceedings and to enter a new order denying the petition. Upon finality of this opinion, the temporary stay order of this court is vacated. Costs in this original proceeding are awarded to petitioner.

Elia, J., and Duffy, J., concurred.

---

[5] In light of our holding, we need not reach petitioner's additional argument pertaining to the authenticity of her signature on the acknowledgment of receipt.