Filed 5/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOURDES TIRI,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUCKY CHANCES, INC.,<br><br>    Defendant and Appellant. | A136675<br><br>(San Mateo County<br>Super. Ct. No. CIV514064) |

Several years after she was hired, Lourdes Tiri signed an agreement with her employer, Lucky Chances, Inc., requiring disputes between them to be resolved by arbitration. In one of the provisions, the parties agreed to delegate questions about the enforceability of the agreement to the arbitrator, instead of a court. Tiri was subsequently fired, and she filed a complaint in superior court for wrongful discharge. Lucky Chances petitioned to compel arbitration, but the trial court denied the petition on the basis that the arbitration agreement was unconscionable and therefore unenforceable.

Lucky Chances appeals the court's order denying arbitration. We hold that the trial court lacked the authority to rule on the enforceability of the agreement because the parties' delegation of this authority to the arbitrator was clear and is not revocable under state law. Accordingly, we reverse.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

More than three years after she was hired as a cook by Lucky Chances, a card-club casino and restaurant in Colma, Tiri was asked and agreed to sign a mutual agreement to arbitrate claims (the agreement). Five years later, Tiri was fired, allegedly while on

1

medical leave after undergoing heart surgery. Tiri brought this action for wrongful discharge, and this appeal turns on whether the agreement precluded the trial court from considering the validity of both the agreement and her underlying legal claims.

The parties dispute the circumstances surrounding Tiri's signing the agreement. According to Tiri, she was called to the human-resources department and given the agreement "right there and then . . . to sign immediately." She contends that the terms of the agreement were not explained, and that she was not told that the terms were negotiable, that her signature was optional, or that she could take the agreement and review it before signing. She "felt [she] had to sign it as a condition of continued employment with Lucky Chances," and she believed that she would be fired if she did not sign it. According to Lucky Chances's human-resources manager, Tiri was never told that the agreement was nonnegotiable, and Tiri never asked to change the agreement or to negotiate its terms. Still, Lucky Chances does not specifically deny that Tiri was told to sign the agreement immediately and was never informed that the terms could be negotiated.

The agreement is a five-page, stand-alone document that is entitled, in blocked, bold lettering, "MUTUAL AGREEMENT TO ARBITRATE CLAIMS." It relates solely to resolving claims between Tiri and Lucky Chances and provides that "any and all differences and/or legal disputes" (except those related to workers' compensation and unemployment-insurance benefits) will be resolved "through the process of final and binding arbitration." The agreement further provides that any arbitration "shall be in accordance with the current AAA [American Arbitration Association] Employment Rules." A copy of those rules was not attached to the agreement, although the agreement identified a website where the rules could be found.

The agreement also includes an explicit provision that delegates to the arbitrator issues regarding the agreement's enforceability: "The Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or any part of this Agreement is void or

2

voidable." This provision is central to the issues in this appeal, and we will refer to it as the delegation clause.

After Tiri filed her complaint, Lucky Chances filed a petition to compel arbitration arguing that the enforceability of the arbitration agreement is a question for the arbitrator, not a court, under the express terms of the delegation clause. Tiri opposed the petition. She argued that the arbitration agreement was unconscionable and that its unconscionability was an issue properly resolved by the trial court.

The trial court issued a tentative ruling denying Lucky Chances's petition, but the ruling did not address the delegation clause. At the hearing on the petition, Lucky Chances's attorney argued that it was important for the court to rule on the threshold issue of the delegation clause and that recent case law required the trial court to delegate to the arbitrator the question whether the arbitration agreement was unconscionable. The court asked about the presence of contractual consideration when an employer asks a current employee to sign an arbitration agreement, and Lucky Chances's attorney insisted that the adequacy of consideration in this case was an issue for the arbitrator to decide, an argument the court considered "rather circular."

At the close of the hearing, the trial court adopted its tentative ruling and denied the petition to compel arbitration. In doing so, it focused on the fact that the arbitration agreement stated it would be governed by AAA rules but failed to attach those rules, citing two cases that declined to enforce arbitration agreements under similar circumstances: *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477 and *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702. The court found that "the arbitration agreement is both substantively and procedurally unconscionable and therefore unenforceable because [Lucky Chances] presented the agreement to plaintiff on a 'take it or leave it basis' and [Lucky Chances] failed to attach the AAA employment dispute resolution rules to the arbitration agreement." Lucky Chances timely appealed.

3

## II.
### DISCUSSION

In this appeal, we must decide whether the trial court properly denied Lucky Chances's petition to compel arbitration in light of the delegation clause, which gives the arbitrator the authority to decide whether the arbitration agreement is enforceable. The answer turns on whether the delegation clause is valid under state-law unconscionability principles. We conclude that the trial court's ruling must be reversed because, although its implied finding that the delegation clause was procedurally unconscionable was correct, its implied finding that the delegation clause was substantively unconscionable was incorrect. As a result of our conclusion that the delegation clause is valid, we leave to the arbitrator the question whether the arbitration agreement as a whole, or any of its other severable provisions, is unconscionable.

A. *The General Law Governing Arbitration Agreements.*

Under both federal and state law, arbitration agreements are valid and enforceable, unless they are revocable for reasons under state law that would render any contract revocable. (9 U.S.C. § 2;[1] Code Civ. Proc., § 1281;[2] *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 (*Armendariz*).) Reasons that would render any contract revocable under state law include fraud, duress, and unconscionability. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142 (*Sonic II*); *Armendariz*, at p. 114; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1551-1552.)

A motion to compel arbitration is essentially a request for specific performance of a contractual agreement. (*Duffens v. Valenti* (2008) 161 Cal.App.4th 434, 443.) The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*); § 1281.2.) The party opposing

---

[1]     Section 2 is part of the Federal Arbitration Act (FAA, 9 U.S.C. §§ 1-16).

[2]     Section 1281 is part of the California Arbitration Act (CAA, Code Civ. Proc., § 1280 et seq.). All undesignated statutory references are to the Code of Civil Procedure.

the petition bears the burden of establishing a defense to the agreement's enforcement by a preponderance of the evidence. (*Rosenthal*, at p. 413; § 1281.2, subd. (b).) In determining whether there is a duty to arbitrate, the trial court must, at least to some extent, examine and construe the agreement. (*Duffens*, at p. 443.)

B. *The Applicability of the Federal Arbitration Act Is Immaterial.*

The parties dispute at length the applicability of the FAA, which governs only arbitration agreements that are part of written contracts affecting interstate commerce. (9 U.S.C. § 2.) But we conclude that the FAA's applicability is immaterial because our decision in this case would be the same under either the FAA or the CAA.

"In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA]; the similarity is not surprising, as the two share origins in the earlier statutes of New York and New Jersey." (*Rosenthal*, *supra*, 14 Cal.4th at p. 406.) In similar language, both the FAA and the CAA provide that predispute arbitration agreements are valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any contract. (*Ibid.*)[3] Thus, enforcing valid arbitration agreements is favored under both state and federal law. (*Armendariz*, *supra*, 24 Cal.4th at pp. 97-98.)

"California courts often look to federal law when deciding arbitration issues under state law." (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553.) They have specifically looked to the FAA when considering delegation clauses (*ibid.*) and have long held that the rules governing these clauses are the same under both state and federal law (*post*, § II.C.). (*Ajamian v. CantorCO2E, L.P.* (2012) 203 Cal.App.4th 771, 781, fn. 4 (*Ajamian*); *Gilbert Street Developers, LLC v. La Quinta Homes, LLC*

---

**3**      Section 2 of the FAA states, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

     Section 1281 states, "A written agreement to submit to arbitration an existing controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

(2009) 174 Cal.App.4th 1185, 1190-1191; *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 503 (*Ontiveros*).)

In *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 72 (*Rent-A-Center*), the United States Supreme Court extended a rule established in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 403-404 (*Prima Paint*). Under *Prima Paint*, a party's challenge to an employment contract that contains a severable arbitration clause does not invalidate the arbitration agreement, and therefore the arbitrator, and not a court, must consider any challenge to the employment contract as a whole. (*Rent-A-Center*, at p. 71.) *Rent-A-Center* extended this rule to situations, like the one here, where the contract at issue is itself an arbitration agreement (instead of a broader employment contract as in *Prima Paint*) that contains a delegation clause. The court held that in such a case, a party's challenge to the arbitration agreement does not invalidate the delegation clause, and therefore the arbitrator, and not a court, must consider any challenge to the arbitration agreement as a whole. (*Rent-A-Center*, at p. 71.) Stated another way, *Rent-A-Center* acknowledges that while courts may consider enforceability challenges *specific to delegation clauses*, the arbitrator is to consider challenges to the arbitration agreement as a whole. (*Id.* at p. 73.)

Although *Rent-A-Center* was decided under the FAA, we agree with Lucky Chances that its holding applies under the CAA as well. (Cf. *Sonic-Calabasas A., Inc. v. Moreno* (2011) 51 Cal.4th 659, 688, fn. 12 (*Sonic I*) [not necessary to decide whether *Rent-A-Center*'s holding applies to actions brought in state courts], overruled on another ground by *Sonic II*, *supra*, 57 Cal.4th at p. 1124; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2012) ¶ 5:150.4, p. 5-109 [unclear whether California courts will apply *Rent-A-Center*].) In extending *Prima Paint*'s holding, *Rent-A-Center* relied on section 1281's federal counterpart, section 2 of the FAA. (561 U.S. at p. 70, citing *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 444-446, *Prima Paint*, *supra*, 388 U.S. 395.) And *Prima Paint*'s severability analysis is already applied in cases governed by the CAA. (*Ericksen,*

6

*Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 322).

Because section 1281 and section 2 of the FAA are interpreted the same under controlling precedent, it makes no difference to the outcome of this case if one but not the other applies. Thus, we need not resolve the parties' dispute whether the agreement sufficiently affects interstate commerce to support the application of the FAA.

    C. *Clauses in Arbitration Agreements that Delegate Enforcement Issues to an Arbitrator Are Effective When They Are Clear and Not Revocable Under State Law.*

Parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement. (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480.) They "can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration." (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286 (*Bruni*).) The delegation clause here was such an agreement, and we turn to consider its validity.[4]

There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. (*Rent-A-Center*, *supra*, 561 U.S. at p. 70, fn. 1.) Second, the delegation must not be revocable under state contract

---

**4**    The threshold issue of whether the proper entity to consider the validity of a delegation clause should be a court or the arbitrator was resolved in *Rent-A-Center*: "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the . . . court must consider the challenge before ordering compliance with that agreement. . . ." (561 U.S. at p. 74.) Here, Lucky Chances does not challenge the court's authority to determine the validity of the delegation clause.

    Because the court must consider the validity of the delegation clause before considering the validity of the rest of the arbitration agreement, we disagree with the suggestion in *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 711 that an appellate court can avoid deciding whether a delegation clause is unconscionable by ruling that all of the remaining provisions are conscionable. In such a case, the ruling that the other provisions are conscionable assumes that a court, and not the arbitrator, has the authority to determine their enforceability. This assumption was precisely the issue that the *Chin* court supposedly avoided, but did not actually avoid, when it declined to rule on the delegation clause and concluded that the challenged terms of the arbitration agreement as a whole were conscionable. (*Id.* at pp. 711-715.)

7

defenses such as fraud, duress, or unconscionability. (*Id.* at p. 68; *Sonic II*, *supra*, 57 Cal.4th at pp. 1142-1143.) We examine both of these prerequisites in connection with the delegation clause here.

The requirement that the language of the delegation clause be clear is straightforward. The law presumes that a delegation to an arbitrator of enforceability issues is ineffective absent clear and unmistakable evidence that the parties intended such a delegation. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944-945 (*First Options*); *Ontiveros*, *supra*, 164 Cal.App.4th at p. 503.) In *First Options*, the court observed that the question of who should determine such a challenge "is rather arcane," and "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers." (*First Options*, at p. 945.) Accordingly, the court determined that a party seeking to enforce a delegation clause must show that it was clear and unmistakable, and silence or ambiguity will be deemed insufficient. (*Id.* at pp. 944-945; see also *Rent-A-Center*, *supra*, 561 U.S. at pp. 65, 70, fn. 1.)

Lucky Chances has demonstrated that the delegation clause here is clear and unmistakable. The clause states unambiguously that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement. . . ." This language indicates an intent to delegate all issues to an arbitrator, including issues of enforceability, and Tiri concedes as much. (*Rent-A-Center*, *supra*, 561 U.S. at p. 70, fn. 1 [party challenging an identically worded delegation clause conceded language was clear]; see also *Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, *supra*, 174 Cal.App.4th at p. 1192 ["An easy case [establishing delegation] is obviously when there is explicit language in the actual signed document to that

effect."].)  We see no reason to disagree with the parties' tacit understanding that the delegation clause here was clear.[5]

The second requirement for a delegation clause to be effective is that it cannot be revocable on state-law grounds such as fraud, duress, or unconscionability.  (*Sonic II*, *supra*, 57 Cal.4th at pp. 1142-1143.)  Here, the only ground the trial court relied upon in determining that the arbitration agreement, and impliedly the delegation clause, was unenforceable was its finding of unconscionability.  In reviewing a finding of unconscionability, we apply a de novo standard of review when, as here, there is no disputed extrinsic evidence.  (*Bruni*, *supra*, 160 Cal.App.4th at pp. 1282-1283.)

"[T]he core concern of unconscionability doctrine is the ' " 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " ' " (*Sonic II*, *supra*, 57 Cal.4th at p. 1145.)  The doctrine is meant to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided.[6]  (*Ibid.*)

---

**5**      In light of our conclusion that the delegation clause is clear and unmistakable, we need not address Lucky Chances's alternative argument that the agreement shows that the parties intended to delegate enforceability issues to the arbitrator because the agreement adopts AAA arbitration rules, which, at least in their current iteration, permit the arbitrator to decide these questions.  (AAA Employment Arb. Rules and Mediation Procs., Rule 6(a).)  On this issue, Division Five of this court has expressed doubts that a simple adoption in an employment arbitration agreement of such rules would constitute a sufficient indication of the parties' intent to delegate all enforceability issues to the arbitrator.  (*Ajamian*, *supra*, 203 Cal.App.4th at pp. 788-790.)

**6**      In a case currently pending before the California Supreme Court, the court requested supplemental briefing on the appropriate standard for determining whether a contract or contract term is substantively unconscionable.  (*Sanchez v. Valencia Holding Co.*, rev. granted Mar. 21, 2012, S199119, and suppl. briefing ordered Feb. 19, 2014.)  *Sanchez* is one of several cases currently pending before the Supreme Court regarding the enforceability of arbitration agreements.  (E.g., *Compton v. Superior Court*, rev. granted June 12, 2013, S210261 [briefing deferred pending disposition of *Sanchez*]; *Mayers v. Volt Management*, rev. granted June 13, 2012, S200709 [same]; *Baltazar v. Forever 21*, rev. granted Mar. 20, 2013, S208345 [whether arbitration agreement unconscionable for lack of mutuality]; *Leos v. Darden Restaurants*, rev. granted Sept. 11, 2013, S212511

9

The "analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' " (*Armendariz*, *supra*, 24 Cal.4th at p. 113.) " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Id.* at p. 114.) "[B]y the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim." (*Ajamian*, *supra*, 203 Cal.App.4th at p. 795.) The party opposing arbitration has the burden of proving unconscionability. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099.)

*Rent-A-Center* involved an employment arbitration agreement's delegation clause that was worded identically to the one here. (*Rent-A-Center*, *supra*, 561 U.S. at p. 70.)

[briefing deferred pending disposition of *Baltazar*]; *Iskanian v. CLS Transportation of Los Angeles*, rev. granted Sept. 19, 2012, S204032 [validity of class-action waivers in context of labor-law rights].)

10

Although the court declined to rule squarely on the conscionability of the clause,[7] it provided a framework for considering the question. It explained that while there must be clear and unmistakable evidence that the parties intended to delegate arbitrability issues to an arbitrator, there is no requirement that conscionability also be "clear and unmistakable." (*Id.* at p. 70, fn. 1.) Importantly, it further explained that any claim of unconscionability must be *specific to the delegation clause*. (*Id.* at p. 73.) In providing an example of such a claim, the court stated that the employee's contention that a discovery limitation in the arbitration agreement was substantively unconscionable would have had to be specifically directed at the delegation clause. In the court's words, the employee "would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable." (*Ibid.*) The court acknowledged that this "would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of [the employee's] factbound employment-discrimination claim unconscionable." (*Ibid.*)

With this framework in mind, we apply state conscionability principles to examine whether Tiri sustained her burden of establishing that the delegation clause is unconscionable.

---

[7]    The employee in *Rent-A-Center, supra*, 561 U.S. p. 63 did not challenge the delegation clause in the lower courts and instead argued that two other provisions—one about fee sharing and another about discovery—rendered the arbitration agreement *as a whole* unconscionable under state law. (*Id.* at pp. 63, 73.) The Supreme Court concluded that the delegation clause was presumptively valid since it had not been challenged below. (*Id.* at pp. 72-73.)

11

1. The Delegation Clause Is Part of a Contract of Adhesion.

Tiri contends, as she did below, that the delegation clause is part of a contract of adhesion. (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144-145 (*Murphy*).) We agree. The delegation clause was drafted by Lucky Chances and presented to Tiri on a take-it-or-leave-it basis, and Tiri stated that she was worried she would lose her job if she refused to sign it. (*Bruni*, *supra*, 160 Cal.App.4th at p. 1282.) In the employment context, "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz*, *supra*, 24 Cal.4th at p. 115.)

The statements by Lucky Chances's human-resources manager that Tiri was never told that the agreement was nonnegotiable and that Tiri never proposed changes fell far short of demonstrating an arms-length bargaining transaction. Tellingly, the manager did not say that the agreement was actually negotiable, that Lucky Chances offered to negotiate, or that Lucky Chances would have considered proposed changes. Under these circumstances, we have no difficulty concluding that the arbitration agreement was a contract of adhesion. (*Murphy*, *supra*, 156 Cal.App.4th at p. 144.)[8]

2. The Delegation Clause Is Procedurally Unconscionable.

The procedural element of unconscionability, as mentioned above, focuses on two factors: oppression and surprise. (*Zullo v. Superior Court*, *supra*, 197 Cal.App.4th at

---

[8] California courts have held that provisions in contracts of adhesion will not be enforced when they violate the "reasonable expectations" of the weaker party. (*Bruni*, *supra*, 160 Cal.App.4th at p. 1289.) As noted in *Bruni*, it "is not entirely clear whether this principle is a subspecies of the doctrine of unconscionability or a separate doctrine." (*Ibid.*) Here, we need not resolve whether the principle is a separate doctrine because, even if it is, Tiri has not argued the point. In any event, the unreasonableness of expecting the weaker party to understand the "rather arcane" meaning of a delegation clause was a factor in requiring delegation clauses to be clear and unmistakable (*First Options*, *supra*, 514 U.S. at p. 945), and this requirement, as we have already concluded, was satisfied here.

p. 484.)  " ' "Oppression" arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'  [Citations.]  'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' " (*Ibid.*)

For the same reasons that we conclude the delegation clause is part of a contract of adhesion, we agree with the trial court's implied finding that the delegation clause is procedurally unconscionable.  Again, the clause was presented along with the rest of the agreement on a take-it-or-leave-it basis.  (*Ajamian*, *supra*, 203 Cal.App.4th at p. 794, fn. 11 [delegation clause procedurally unconscionable where presented on take-it-or-leave-it basis].)  Although, as we have already determined, the delegation clause was clear and unmistakable, the issue of delegating arbitrability questions to an arbitrator is a "rather arcane" issue upon which parties likely do not focus.  (*First Options*, *supra*, 514 U.S. at p. 945.)  Tiri was an unsophisticated party who was presented with the agreement containing the clause years after being hired by Lucky Chances, and was given little time to review it.  The arcane nature of the clause, Tiri's lack of sophistication, and the failure of Lucky Chances to provide adequate time to review the agreement all add to the oppression and surprise of the delegation clause in this case.[9]

---

[9]    The parties disagree whether the failure to provide Tiri with a copy of the AAA rules supports a determination that the arbitration agreement *as a whole* was procedurally unconscionable, an issue that has been analyzed by several Courts of Appeal, which have reached different conclusions.  (E.g., *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1146 [failure to provide copy of arbitration rules supported finding of procedural unconscionability]; *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [same]; *Zullo v. Superior Court*, *supra*, 197 Cal.App.4th at pp. 485-486 [same]; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 [requiring employee independently to find and research obscure rules referenced in an arbitration agreement is oppressive]; but see *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 691-692 [failure to attach AAA rules to arbitration agreement did not render the agreement procedurally unconscionable, because rules were easily accessible on the Internet and plaintiff did not lack means or capacity to retrieve them]; *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1466, 1472 [failure to attach AAA rules, standing alone, insufficient grounds to find procedural unconscionability in employment case where employee had 25 days to consider

13

### 3. The Delegation Clause Is Not Substantively Unconscionable.

Although we conclude that the delegation clause is a contract of adhesion and procedurally unconscionable, we conclude that it is nonetheless valid because it is not substantively unconscionable. The delegation clause is not overly harsh, and does not sanction one-sided results. (*Armendariz, supra*, 24 Cal.4th at p. 114.) "[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Id.* at p. 120.) The delegation clause here does not lack mutuality because Tiri and Lucky Chances are bound by it equally.

In denying Tiri's petition to compel arbitration, the trial court relied on *Zullo v. Superior Court, supra*, 197 Cal.App.4th 477 and *Fitz v. NCR Corp.*, *supra*, 118 Cal.App.4th 702 in finding that the arbitration agreement as a whole was unconscionable. But neither of these cases provides a persuasive basis for concluding that the delegation clause is substantively unconscionable. Both *Zullo* and *Fitz* reviewed employment arbitration agreements and concluded that they were substantively unconscionable because they lacked mutuality. In *Zullo*, the court found that the agreement lacked mutuality in two ways. First, the agreement applied to "any" dispute arising out of a termination. (*Zullo, supra,* at p. 486.) According to the *Zullo* court, this unfairly favored the employer because termination disputes " 'are virtually certain to be filed against, not by [the employer],' " but the agreement included no corresponding provision requiring the employer to arbitrate the types of claims that it might bring against the employee. (*Ibid*.) Mutuality was lacking, in other words, because arbitration

_____

employment offer that included arbitration agreement].) We need not resolve whether the failure to attach the AAA rules supports a finding of procedural unconscionability of the delegation clause because we find that it is procedurally unconscionable for other reasons. We leave to the arbitrator the determination of whether the failure to attach the AAA rules supports a finding that the agreement as a whole, or any of its other severable provisions, is unenforceable as a result of both procedural and substantive unconscionability. (*Post*, § II.C.3.)

was required for disputes that the employee was likely to initiate but not for disputes that the employer was likely to initiate. Second, the agreement unfairly favored the employer because it required the employee, but not the employer, to respond to any communications about arbitration proceedings within 10 days or forfeit the claim.[10] (*Id.* at p. 487.) In *Fitz*, the court found that the agreement lacked mutuality because it imposed a two-deposition limit on the employee (but not the employer) in wrongful-termination claims and, as with the agreement in *Zullo*, it failed to require the employer to arbitrate other types of disputes. (*Fitz*, *supra*, at pp. 717-725.) Thus, in both cases the agreement left the employee more bound by arbitration than the employer.

In contrast, the delegation clause here does not lack mutuality because Tiri and Lucky Chances are bound by it equally. The agreement requires arbitration for "any and all differences and/or legal disputes" (whether by or against the employee or employer). This mutuality is nearly unqualified, and it is far more than the " 'modicum of bilaterality' " required by our state Supreme Court in employment arbitration agreements. (*Armendariz*, *supra*, 24 Cal.4th at p. 117.) We can find nothing in the delegation clause upon which to conclude that it lacks mutuality or is otherwise unreasonably favorable to Lucky Chances.

Tiri argues at length that various provisions of the arbitration agreement are substantively unconscionable, but her arguments are not specific to the delegation clause as required under *Rent-A-Center*. (*Rent-A-Center*, *supra*, 561 U.S. at p. 73.) For example, she argues that the agreement's confidentiality clause is substantively unconscionable because it could give Lucky Chances an advantage on her underlying claims for wrongful discharge by preventing her from contacting other employees and accessing information that is available to Lucky Chances. (*Davis v. O'Melveny & Myers*

---

**10**     *Zullo* also noted, without deciding, that a provision in the arbitration agreement preventing the tolling of the limitations period "might also contribute to substantive unconscionability." (*Zullo v. Superior Court*, *supra*, 197 Cal.App.4th at p. 487, fn. 4.)

(9th Cir. 2007) 485 F.3d 1066, 1078 (*Davis*).)[11]  But she does not assert and demonstrate that the confidentiality clause *as applied to the delegation clause* renders *that* clause unconscionable by impeding her ability to arbitrate whether the arbitration agreement as a whole is unconscionable.  (*Rent-A-Center*, *supra*, at p. 73.)

We are mindful that two decisions from this district, *Ontiveros* and *Murphy*, declined to enforce delegation clauses in employment arbitration contracts of adhesion on unconscionability grounds even though, like the delegation clause here, the clauses were explicit and clear.  (*Ontiveros*, *supra*, 164 Cal.App.4th 494; *Murphy*, *supra*, 156 Cal.App.4th 138.)  But these holdings have been undermined by the more recent United States Supreme Court decisions in *Rent-A-Center* and *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, 131 S.Ct. 1740 (*Concepcion*).  *Rent-A-Center* held that delegation clauses are valid absent a challenge specific to the delegation clause (561 U.S. at pp. 73-74), and *Concepcion* held that courts may not issue categorical rulings that interfere with fundamental aspects of arbitration (131 S.Ct. at p. 1748).

We discuss how each of these cases has undermined the holdings in *Murphy* and *Ontiveros,* and we begin with *Rent-A-Center*.  In *Murphy* and *Ontiveros*, two substantive unconscionability concerns were identified with delegation clauses in employment arbitration contracts of adhesion.  The first was a lack of mutuality because the agreement was " 'entirely one sided because [the employer] cannot be expected to claim that it drafted an unconscionable agreement.' "  (*Ontiveros*, *supra*, 164 Cal.App.4th at p. 504.)  In other words, the concern was that if arbitrators get to decide enforcement issues, employees will be more caught up in arbitration processes than employers because they are far more likely to bring enforcement challenges.  The second was that allowing arbitrators to decide enforceability issues is unfair because arbitrators could be invested in the outcome: "In such situations, in which one party tends to be a repeat player, the

---

**11**     *Davis* was overruled on another ground in *Ferguson v. Corinthian Colleges, Inc.* (9th Cir. 2013) 733 F.3d 928, 933-934.

arbitrator has a unique self-interest in deciding that a dispute is arbitrable." (*Id.* at p. 505.)

But these concerns, as reasonable as they are, are virtually *always* present with delegation clauses in employment arbitration agreements. To conclude that they signify substantive unconscionability would be tantamount to concluding that delegation clauses in employment arbitration agreements are categorically unenforceable. Such a conclusion would conflict with *Rent-A-Center*'s indication that delegation clauses in employment agreements are enforceable so long as they are clear and unmistakable. (*Rent-A-Center*, *supra*, 561 U.S. at p. 72; see also *First Options*, *supra*, 514 U.S. at pp. 944-945.) We conclude that the inescapable import of *Rent-A-Center* is that clear delegation clauses in employment arbitration agreements are substantively unconscionable only if they impose unfair or one-sided burdens that are *different* from the clauses' inherent features and consequences. Here, Tiri has failed to demonstrate that the delegation clause imposes any such burdens.

Not only does *Rent-A-Center* undermine the holdings in *Murphy* and *Ontiveros*, but so does *Concepcion*. In *Concepcion*, the United States Supreme Court reviewed the California Supreme Court's ruling in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148. In *Discover Bank*, the California Supreme Court held that class-arbitration waivers in consumer contracts were unenforceable under state-law unconscionability principles. (*Id.* at pp. 153, 162.) *Concepcion* held that *Discover Bank*'s holding interfered with the FAA's goal of ensuring the enforcement of arbitration agreements according to their terms. (*Concepcion*, *supra*, 131 S.Ct. at pp. 1748-1750.) The Supreme Court held that, regardless of their policy justifications, state judicial rulings[12] cannot invalidate

---

[12] The FAA preempts both state judicial rulings and legislation disfavoring arbitration. (*Concepcion*, *supra*, 131 S.Ct. at p. 1747.) *Concepcion* analyzed a categorical judicial ruling (*ibid.*), as we do here. Our analysis under the CAA would be different in a case involving state legislation because the CAA, being a state statute, "obviously does not prevent our Legislature from selectively prohibiting arbitration in certain areas." (*Armendariz*, *supra*, 24 Cal.4th at p. 98.)

17

arbitration agreements on state-law defenses pertaining "only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Id.* at p. 1746.)

Our state Supreme Court provided guidance on *Concepcion* in *Sonic II*, which was decided on remand from the United States Supreme Court after the high court vacated *Sonic I, supra,* 51 Cal.4th 659 for reconsideration in light of *Concepcion*. In *Sonic II*, the court concluded that state rulings "even when facially nondiscriminatory, must not disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[] with fundamental attributes of arbitration.' " (*Sonic II*, *supra*, 57 Cal.4th at p. 1143, original italics.) To deny enforcing a delegation clause without identifying an unfair term— different from the features and consequences inherent with such a clause—would interfere with "the overarching purpose of the FAA . . . to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings," and would "interfere[] with fundamental attributes of arbitration and thus create[] a scheme inconsistent with the FAA." (*Concepcion*, *supra*, 131 S.Ct. at p. 1748; see also *Armendariz*, *supra*, 24 Cal.4th at pp. 97-98 [Legislature and state courts hold friendly view toward arbitration process].) In short, we decline to follow *Ontiveros* and *Murphy* in light of *Rent-A-Center* and *Concepcion*.

The delegation clause here is clear and unmistakable, and it is not revocable under state unconscionability principles. Tiri has identified no aspect of the clause that would overcome *Rent-A-Center*'s assumption of validity or allow us to prevent its enforcement under *Concepcion*. Thus, she has failed to sustain her burden of demonstrating by a preponderance of the evidence that the delegation clause is unenforceable. (*Rosenthal*, *supra*, 14 Cal.4th 394 at p. 413.)

Having determined that the delegation clause was valid, we conclude that the trial court's denial of Lucky Chances's petition to compel arbitration was improper. Thus, it will be for the arbitrator to consider the conscionability of the agreement as a whole and its other severable provisions.

## III.
### DISPOSITION

The order denying appellant's petition to compel arbitration is reversed.  Each side shall bear its own costs on appeal.


_____

Humes, J.


We concur:


_____

Ruvolo, P.J.


_____

Reardon, J.

Trial Court:          San Mateo County Superior Court

Trial Judge:          Honorable Joseph C. Scott

Counsel for Appellant:     Tyler M. Paetkau

Counsel for Respondent     Allan A. Villanueva