Filed 2/7/25  Isobe v. Matsuhisa CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RYUTARO ISOBE et al., | B333628 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 23SMCV01686) |
| v. | |
| YOKO MATSUHISA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark H. Epstein, Judge.  Reversed.

Mayer Brown, Kevin Ranlett, Carmen Longoria-Green, John Nadolenco, and Daniel D. Queen for Defendant and Appellant.

Keith A. Fink & Associates, Keith A. Fink and Olaf J. Muller for Plaintiffs and Respondents.

_____

Defendant and appellant Yoko Matsuhisa appeals from an order denying her motion to compel arbitration and to stay the action filed by plaintiffs and respondents Kazan LLC (Kazan) and Ryutaro Isobe.  Matsuhisa argues the trial court erred when it refused to submit respondents' unconscionability challenge to the arbitrator in the first instance based on a valid delegation provision.  We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND
### I.    Complaint

Isobe had created Kazan to own and operate Kazan Beverly Hills, a restaurant that won a Michelin star just three years after opening.  Matsuhisa is the wife of famed restauranteur Nobu Matsuhisa.

Isobe and Matsuhisa signed a written operating agreement for Kazan whereby Matsuhisa would buy a minority membership interest in Kazan for $1 million.  Isobe alleged that while he treated Matsuhisa as a minority member, Matsuhisa failed to pay for her Kazan membership interest and has failed to pay the contractually agreed sum of $1 million.  He further alleged that Matsuhisa's failure to contribute the promised $1 million in capital to Kazan caused tremendous hardship, leaving Kazan with insufficient capital to properly operate with full staff or pay vendors.  As a result, Isobe had to work tremendous hours to make up for this staffing shortfall, which significantly impacted his health.

After failing to resolve the matter informally, Isobe sued Matsuhisa, alleging breach of contract and other causes of action based on the failed deal.

## II. Motion to compel arbitration

Matsuhisa moved to compel Isobe's claims to arbitration, citing the operating agreement attached to Isobe's complaint. Matsuhisa argued the operating agreement contained a valid arbitration agreement compelling the parties to submit all claims, defenses, and issues in the matter to binding contractual arbitration. Matsuhisa also argued the arbitrator had jurisdiction to determine the arbitrability of the dispute and validity of the arbitration agreement per a delegation provision.

In support of her arguments, Matsuhisa cited to "Article Seventeen" of the operating agreement, which provided: "The Members and [Isobe] shall use the procedure outlined in this Article to resolve any dispute, contest, or claim that may result among any of the Members or between one or more of the Members and [Isobe] and [Kazan] that may relate to this Agreement. The purpose of the alternative dispute resolution procedures in this Article is to resolve all disputes, contests, and claims without litigation." Article Seventeen required the parties to follow a three-step dispute resolution process. First, the parties were to try to resolve the issue through negotiation by authorized representatives. If negotiations failed, the parties were to submit the dispute to mediation. If the parties failed to mediate the dispute, the parties were to submit the controversy to mandatory and binding arbitration, applying the Commercial Arbitration Rules of the American Arbitration Association (AAA Commercial Rules). In turn, the AAA Commercial Rules provided that, the arbitrator had "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (*Id.*, Rule R-7(a).)

Isobe opposed the motion, asserting the arbitration terms were fatally uncertain, violative of California law, and substantively and procedurally unconscionable. Isobe also argued that Matsuhisa had waived her right to arbitrate because, although Isobe had only recently filed his lawsuit, the controversy actually arose much earlier when Matsuhisa refused to pay the $1 million for her membership interest in Kazan. Isobe did not specifically challenge Matsuhisa's argument that the arbitrator had jurisdiction to determine the arbitrability of Isobe's claims.

After tentatively granting the motion, the trial court reversed its decision and denied the motion. The trial court found parts of the first two steps of the alternative dispute resolution process were substantively unconscionable, specifically, the required use of authorized representatives and the potential that the mediator could force a binding settlement onto the parties via their authorized representatives. The trial court also found the alternative dispute resolution process to be procedurally unconscionable insofar as all of the process collectively imposed an unfair burden and cost onto Isobe, who would have to pay for an authorized representative, and then potentially pay for a mediator, expert witnesses, and the arbitrator, as well as his own separate legal counsel and legal costs, just to resolve any dispute with Matsuhisa.

In terms of procedural unconscionability, the trial court found Isobe made a relatively weak showing. However, this was sufficient given the strong showing of substantive unconscionability. It also noted that Isobe's procedural unconscionability arguments were uncontested by Matsuhisa,

and Isobe had less than equal bargaining power as compared to Matsuhisa.

The trial court did not address Matsuhisa's argument that the delegation provision required Isobe and Kazan to submit their claims that the arbitration agreement was void and invalid to the arbitrator.

Matsuhisa appealed.

## DISCUSSION

Although the parties raise various arguments in their briefs, we find one determinative—the operating agreement's delegation provision deprived the trial court of authority to determine whether the arbitration agreement as a whole was valid and enforceable in the first instance.[1]  Because Isobe did not challenge the delegation provision, instead arguing that the entire arbitration agreement was invalid and unenforceable, we conclude the trial court should have compelled this threshold issue to arbitration.

### I.     Standard of review and governing law

"Under both federal and state law, arbitration agreements are valid and enforceable, unless they are revocable for reasons under state law that would render any contract revocable. [Citations.]  Reasons that would render any contract revocable under state law include fraud, duress, and unconscionability."

---

[1]     Matsuhisa requested judicial notice of various documents on appeal.  Because we are resolving this appeal on the discrete issue of the validity of the delegation provision and those documents are unnecessary to decide the appeal, the request is denied.

5

(*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 239 (*Tiri*).)

"A motion to compel arbitration is essentially a request for specific performance of a contractual agreement.  [Citation.]  The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an arbitration agreement.  [Citations.]  The party opposing the petition bears the burden of establishing a defense to the agreement's enforcement by a preponderance of the evidence.  [Citations.]  In determining whether there is a duty to arbitrate, the trial court must, at least to some extent, examine and construe the agreement."  (*Tiri, supra,* 226 Cal.App.4th at p. 239.)

" 'When a trial court's order is based on a question of law, we review the denial de novo.  [Citation.]  Decisions on issues of fact are reviewed for substantial evidence.  [Citation.]'  [Citation.] 'Where . . . the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' "  (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 764–765.)

## II. Delegation provisions

"The parties to an arbitration agreement can agree in a delegation provision 'to arbitrate "gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.' "  (*J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, 1114 (*J.R.*), quoting *Rent-A-Center, W., Inc. v. Jackson* (2010) 561 U.S. 63, 70 (*Rent-A-Center*).)  "An agreement to arbitrate a gateway issue—otherwise known as a delegation provision—'is simply an additional, antecedent agreement the party seeking arbitration asks . . . [a] court to enforce.' "  (*Ibid.*) Further, because each agreement is severable, the arbitration

agreement is severable from the overarching agreement containing it, and the delegation provision is severable from the arbitration agreement containing it.  (*J.R.*, at p. 1117, citing *Rent-A-Center*, at pp. 70–72.)

The party opposing the enforcement of a delegation provision must challenge the delegation provision specifically. (*J.R.*, *supra*, 98 Cal.App.5th at p. 1114.)  "Absent such a challenge, a court must treat the delegation provision as valid and enforce it, 'leaving any challenge to the validity of [the arbitration agreement or] the [a]greement as a whole for the arbitrator.' "  (*Ibid.*)

Here, Matsuhisa has sufficiently established at least the existence of a delegation provision in the parties' agreement. Under the terms of the AAA Commercial Rules, which were incorporated into the agreement, the arbitrator had "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (*Id.*, Rule R-7(a).)  Neither Isobe nor Kazan specifically challenged this delegation provision either in the trial court or on appeal.  Rather, their arguments have been directed to the arbitration agreement as a whole.  Because the delegation provision was severable from the arbitration agreement, and Isobe and Kazan failed to challenge that provision, the trial court should have directed the gateway issue of the validity of the arbitration agreement to the arbitrator.  Further, because Isobe's and Kazan's arguments on appeal are similarly directed towards the arbitration agreement as a whole rather than the delegation provision, we find reversal is warranted.

## DISPOSITION

The order is reversed.  The trial court shall order the threshold question of whether the arbitration agreement is valid and enforceable to the arbitrator.  Appellant shall be awarded her costs on appeal.


                                        VIRAMONTES, J.


WE CONCUR:



            STRATTON, P. J.



            GRIMES, J.