**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT COCOM, on behalf of himself and others similarly situated,

*Plaintiff - Appellee*,

v.

ABM AVIATION, INC.,

*Defendant - Appellant*,

and

DOES, 1 to 100, inclusive,

*Defendant*.

No. 25-3246

D.C. No.
2:24-cv-08389-
WLH-MAR

OPINION

Appeal from the United States District Court
for the Central District of California
Wesley L. Hsu, District Judge, Presiding

Argued and Submitted February 13, 2026
Pasadena, California

Filed June 23, 2026

Before: Richard C. Tallman, Lawrence VanDyke, and Eric C. Tung, Circuit Judges.

Opinion by Judge VanDyke

## SUMMARY[*]

### Arbitration

In a putative wage and hour class action brought by Robert Cocom against his former employer ABM Aviation, Inc. ("ABM"), the panel reversed the district court's judgment that ABM could not enforce the Mutual Arbitration Agreement ("MAA") the parties signed when Cocom was first employed by ABM, and remanded for further proceedings.

The district court concluded that the MAA was procedurally and substantively unconscionable based on the analysis in *Cook v. University of Southern California*, 321 Cal. Rptr. 3d 336 (Cal. Ct. App. 2024). The panel held that because the challenged provisions of the MAA were distinguishable in important ways from the provisions held unconscionable in *Cook*, the district court erred in relying on *Cook*.

The panel first addressed substantive unconscionability. In *Cook*, the court found the arbitration agreement's scope, duration, and lack of mutuality to be

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

substantively unconscionable. Here, the MAA was limited to employment-related disputes, making this case distinguishable from *Cook* and from the California Court of Appeal's more recent decision in *Stoker v. Blue Origin, LLC*, 343 Cal. Rptr. 3d 756 (Cal. Ct. App. 2026). Second, because the MAA's more limited scope inherently limited the agreement's duration, the MAA's duration was not indefinite and not substantively unconscionable. Third, *Cook*'s lack-of-mutuality analysis was distinguishable largely because of the MAA's narrower scope.

Although the district court did not reach the issue, the panel concluded that the MAA's bar on using arbitration awards for preclusive or precedential effect was not substantively unconscionable.

Finally, the panel held that even if the MAA's waivers of representative actions under California's Private Attorneys General Act or of public injunctive relief were substantively unconscionable, those provisions would be severable. Accordingly, the panel concluded that it need not address whether either waiver rose to the level of substantive unconscionability.

Because the panel concluded that most of the MAA's challenged provisions were not substantively unconscionable, and that any remaining unconscionable provisions could be properly severed, Cocom's unconscionability defense failed. Because the lack of substantive unconscionability was dispositive, the panel held that it need not address Cocom's arguments about procedural unconscionability.

**COUNSEL**

Jordan D. Bello (argued), Matthew J. Gustin, Jeffrey M. Schwartz, Joseph Lavi, Brett Szmanda, and Vincent Granberry, Lavi & Ebrahimian LLP, Beverly Hills, California, for Plaintiff-Appellee.

Daniel F. Fears (argued), Brian R. Shaw, Sean A. O'Brien, and Laura Fleming, Payne & Fears LLP, Irvine, California, for Defendant-Appellant.

**OPINION**

VANDYKE, Circuit Judge:

Plaintiff-appellee Robert Cocom filed a putative wage and hour class action against his former employer, defendant-appellant ABM Aviation, Inc. ("ABM"). ABM moved to compel arbitration of Cocom's claims under an arbitration agreement the parties signed when Cocom was first employed by the company. The district court ruled that ABM could not enforce the arbitration agreement, concluding that it was procedurally and substantively unconscionable based on the analysis in *Cook v. University of Southern California*, 321 Cal. Rptr. 3d 336 (Cal. Ct. App. 2024). Because the challenged provisions of the arbitration agreement here are distinguishable in important ways from the provisions held unconscionable in *Cook*, we reverse and remand for further proceedings consistent with this opinion.

## I.  Background

### A.

ABM offers commercial janitorial services to airports. Cocom worked for ABM as an airport janitor between August 2020 and June 2024.  When Cocom was hired, he signed a three-page Mutual Arbitration Agreement ("MAA").

The MAA establishes arbitration as "the exclusive remedy for any 'Covered Claim.'"  Covered claims are defined as

> any claim that the Company has against me or that I have against the Company, its past, present, and future parent(s), subsidiaries, affiliates, and/or their respective past, present, and future officers, directors and/or employees, including but not limited to claims arising and/or relating in any way to my hiring, my employment or association with, my compensation, and/or the end of my employment with, the Company.

The MAA goes on to enumerate specific claims covered:

> Covered Claims include, but are not limited to, any claim for breach of contract, for any provision of federal or state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime, for unpaid compensation or penalties for missed meal or rest breaks, for wrongful termination, for unfair competition, for discrimination, harassment, or unlawful retaliation, for violation of the

> Uniformed Services Employment and Reemployment Rights Act, for violation of the Fair Labor Standards Act, or any federal, state, or local laws to the full extent permitted by applicable federal law after the application of Federal Arbitration Act … preemption principles.

Claims "currently pending in litigation" are excluded from the definition of "Covered Claims." The MAA designates the "Employment Arbitration Rules and Mediation Procedures" promulgated by the American Arbitration Association ("AAA") as the rules to govern any resulting arbitration.

Other MAA provisions relevant here include a waiver of the right to bring "class, collective, or representative proceeding[s]," including those "under California's Private Attorneys General Act of 2004" ("PAGA"). The agreement also contains a severability provision: "If any provision of this Agreement is adjudged to be void or otherwise unenforceable by a court …, the parties agree that such provision may be severed …."

### B.

In August 2024, Cocom filed a putative class action in state court alleging wage and hour violations. ABM removed the suit to federal court under the Class Action Fairness Act, and then filed a motion to compel arbitration and strike Cocom's class claims.

The district court denied ABM's motion after finding the arbitration agreement unconscionable. Pointing to the fact that the MAA was a contract of adhesion and Cocom's allegations that he was rushed through the signing process,

the district court concluded that the agreement was procedurally unconscionable. The district court concluded that four MAA provisions rendered the agreement substantively unconscionable as well. Relying heavily on the California Court of Appeal's decision in *Cook*, 321 Cal. Rptr. 3d 336, the district court interpreted the "including but not limited to" language in the MAA's definition of covered claims to mean that the MAA applied to any claims whatsoever, even those with no relation to Cocom's employment. Under *Cook*, the district court reasoned, such a broad scope rendered the agreement substantively unconscionable.

The district court's interpretation of the agreement's scope rendered two other provisions of the agreement unconscionable as well: (1) the MAA's duration, which the district court found to be indefinite, and (2) the MAA's lack of mutuality—third parties, such as "parent(s), subsidiaries, affiliates, … officers, directors, and/or employees," as well as "client(s) and/or vendor(s) of the Company," could all compel Cocom to arbitrate, but Cocom would have a harder time compelling them to arbitrate. Finally, the district court found that the MAA's bar on public injunctive relief contravened California law and was therefore substantively unconscionable as well.

Because it found so many provisions substantively unconscionable, the district court believed the MAA to be so "tainted with illegality" that it declined to sever any of the offending provisions, and instead refused to enforce the agreement in its entirety. *Cook*, 321 Cal. Rptr. 3d at 349–50). ABM appealed.

## II.  Jurisdiction and Standard of Review

We have jurisdiction under 9 U.S.C. § 16(a)(1)(B).  *See Van Dusen v. Swift Transp. Co.*, 830 F.3d 893, 897 (9th Cir. 2016).  We review a district court's denial of a motion to compel arbitration de novo, including the district court's rulings on the scope and validity of an arbitration agreement. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 917 (9th Cir. 2011).  A district court's decision not to sever unconscionable provisions in an arbitration agreement is reviewed for abuse of discretion.  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

## III.  Discussion

The FAA recognizes state law contract defenses to the enforcement of an arbitration agreement.  9 U.S.C. § 2. Unconscionability is one such defense.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000).  Proving an unconscionability defense requires establishing both procedural and substantive unconscionability.  *Id.*  California employs a sliding scale approach to the two types of unconscionability: "a greater showing of procedural or substantive unconscionability will require less of a showing of the other" to establish the defense.  *Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 793 (Cal. Ct. App. 2012).  The party opposing arbitration "bears the burden of establishing a defense to the agreement's enforcement." *Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621, 627 (Cal. Ct. App. 2014).

We address substantive unconscionability first.  The district court found four MAA provisions substantively unconscionable: (1) the scope of the definition of "covered claims," (2) the duration of the contract, (3) the supposed lack of mutuality, and (4) the bar on public injunctive relief.

The district court declined to address whether two other provisions challenged by Cocom were also unconscionable: provisions barring (1) representative PAGA actions and (2) waiving employees' ability to use an arbitration award for preclusive or precedential effect.  Because we conclude that most of the MAA's challenged provisions are not substantively unconscionable, and that any remaining unconscionable provisions can be properly severed, Cocom's unconscionability defense fails.  The lack of substantive unconscionability is dispositive, so we need not address Cocom's arguments about procedural unconscionability.  *Armendariz*, 6 P.3d at 690.

## A.  *Cook v. University of Southern California*

Because both the district court and Cocom rely heavily on the California Court of Appeal's decision in *Cook v. University of Southern California*, 321 Cal. Rptr. 3d 336, we discuss that case before turning to the provisions of the MAA.

In *Cook*, the plaintiff employee signed an arbitration agreement with the University of Southern California that provided for arbitration "of all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including … officers, trustees, administrators, employees or agents, in their capacity as such or otherwise." *Id.* at 340.  The agreement further elaborated: "The claims covered by this Agreement include, but are not limited to," a long list of claims related to employment (for instance, "claims for wages or other compensation due") and claims unrelated to employment (most notably, "claims for personal, physical, or emotional injury, or for any tort"). *Id.* The agreement "survive[d] the termination of Employee's

employment" and lasted until "revoked or modified in a written document … signed by the President of the University." *Id.*

The *Cook* court found the agreement's scope, duration, and lack of mutuality to be substantively unconscionable. On scope, the court read "whether or not arising out of Employee's University employment, remuneration or termination" to mean that the agreement covered any claim the plaintiff could bring, whether or not related to employment. *Id.* 344–46. Because "USC appear[ed] to concede" that such a scope would be "unconscionably broad," the court concluded that the agreement's coverage of claims unrelated to employment such as "defamatory statements" was substantively unconscionable. *Id.* at 344, 346.

Likewise, the court found the agreement's indefinite duration—"surviv[ing] unless and until Cook and USC's president specifically terminate the agreement in a writing"—to be substantively unconscionable as well. *Id.* at 347. Because the court had concluded that the agreement covered claims unrelated to Cook's employment, covered claims could arise long after Cook stopped working for the University. The court referenced the trial court's concern that a tort claim for being "the victim of a botched surgery in a USC hospital in 15 years" would still be covered. *Id.* at 341.

Finally, the court found that the agreement lacked mutuality because third party beneficiaries could easily invoke it against Cook, but Cook would have a harder time invoking the agreement against third parties. *Id.* at 347–49. This was so, the court concluded, because "nonsignatories may enforce an arbitration agreement against a party to the

agreement simply by showing they are intended third party beneficiaries." *Id.* at 349. But "for Cook to enforce the arbitration agreement against USC's agents or employees as third party beneficiaries, she would have [had] to show they actually accepted a benefit under the agreement"—a more difficult burden. *Id.* at 349. While the court acknowledged that including third parties is not unconscionable on its own, USC failed to justify "why Cook should be required to give up the ability to ever bring claims in court against a USC employee that [were] unrelated to USC or her employment there." *Id.* at 348. That treatment was sufficiently "one-sided" to rise to the level of substantive unconscionability. *Id.*

The *Cook* court determined that the combination of the three substantively unconscionable provisions meant the trial court had not abused its discretion in ruling the whole agreement unenforceable under California law. *Id.* at 349–50. In the court's view, the unconscionable provisions sufficiently permeated the contract's central purpose of "requir[ing] Cook to arbitrate claims that d[id] not relate to her employment or her employer" to support the district court's refusal to sever the unconscionable provisions. *Id.* at 350.

## B. Scope

The MAA here is limited to employment-related disputes, making this case distinguishable from *Cook* and from the California Court of Appeal's more recent decision in *Stoker v. Blue Origin, LLC*, 343 Cal. Rptr. 3d 756 (Cal. Ct. App. 2026), which applied *Cook* to a similarly worded arbitration agreement. And even if the MAA were not so limited, the close factual similarity to *Ayala-Ventura v. Superior Court*, 342 Cal. Rptr. 3d 500 (Cal. Ct. App. 2026),

in which the court found that a similarly worded agreement's scope was not substantively unconscionable, suggests that the scope of the MAA's coverage would not rise to the level of substantive unconscionability.

As an initial matter, the MAA lacks the language underlying the *Cook* court's interpretation of the agreement's scope.  There, the agreement explicitly covered claims "whether or not arising out of [Cook's] University employment, remuneration or termination."  *Cook*, 321 Cal. Rptr. 3d at 340.[1]  The only indication that the MAA could be read in similarly broad fashion is the "including but not limited to" language in the definition of covered claims.  The district court read that phrase to mean that the MAA's scope is completely unlimited (other than claims explicitly excepted).  We reject that reading.

The interpretive principle of ejusdem generis indicates that "any claim" in the MAA refers only to employment-related claims.  "Under the principle of ejusdem generis …, where specific words follow general words in a contract, the general words are construed to embrace only things similar in nature to those enumerated by the specific words."  *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 223 (Cal. Ct. App. 2008) (internal quotation marks omitted).  "'Including, but not limited to' is a phrase of enlargement but not necessarily a phrase without limits.  While the proviso 'including, but not limited to' connotes an

---

[1] Even the language from *Cook* would not dispositively settle the scope question.  Based on principles of contract interpretation, the court in *Ayala-Ventura* interpreted the arbitration agreement at issue there to be limited to employment-related disputes even though the agreement used language nearly identical to *Cook*, covering claims "whether or not arising out of [Ayala-Ventura]'s employment or the termination of employment."  342 Cal. Rptr. 3d at 512–13 (alteration in original).

illustrative listing, the specific examples listed may restrict the meaning of the defined term." *Brown v. City of Inglewood*, 570 P.3d 885, 892 (Cal. 2025) (citation modified).  The general terms in the MAA—"all disputes" and "any claim" are narrowed by the subsequent list of specific terms: "my hiring, my employment, my compensation, and/or the end of my employment, with the Company," as well as "any claim for breach of contract, for any provision of federal or state labor code or a Wage Order, for unpaid fees, expenses, wages, or overtime," and the like. The employment-related nature of the enumerated terms restricts the meaning of the more general terms to encompass only employment-related disputes.

An equivalent ejusdem generis analysis would not have been possible in *Cook*.  The enumeration of covered claims there included claims unrelated to employment—most notably, a general reference to tort claims.  *See Cook*, 321 Cal. Rptr. 3d at 340.  It was the prospect of precisely those sorts of claims—tort suits unrelated to employment—that loomed large in the *Cook* court's analysis: the examples it relied on to illustrate the agreement's unconscionable breadth were tort suits unrelated to employment.  *See Cook*, 321 Cal. Rptr. 3d at 341 (referencing the district court's example of needing to arbitrate claims for "an injury related to USC" such as a "botched surgery in a USC hospital in 15 years"); *id.* at 346 (noting that the plaintiff would have to arbitrate defamation suits).  The same was true in *Stoker*, which applied *Cook* to conclude that a similarly worded agreement unconscionably applied to claims unrelated to employment.  343 Cal. Rptr. 3d at 760–61.  The enumeration of covered claims in *Stoker*, as in *Cook,* included tort claims, and the court used torts unrelated to employment to illustrate the agreement's unconscionable breadth.  *Id.* at 760

(arbitration agreement's enumeration of covered claims included tort claims), *id.* at 767 (illustrating finding that arbitration agreement was unconscionably broad by noting that the plaintiff's claims would be covered if he "were to be injured in an automobile accident with another Blue Origin employee years after his employment ended, or if his house were damaged by debris from a Blue Origin rocket"). Nothing in the MAA's enumeration of covered claims requires that the MAA covers tort claims—or any other claims—unrelated to employment.  Applying the principle of ejusdem generis therefore distinguishes this case from *Cook* and *Stoker*.

California contract interpretation principles likewise compel the narrower reading.   Under California law, "[w]here a contract is susceptible to two interpretations, one which renders it valid and the other which renders it void, a court should select the interpretation that makes the contract valid." *Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 540 (Cal. 2024); *see* Cal. Civ. Code § 1643.  Cocom cites the conflicting rule that ambiguities in a contract of adhesion are construed against the drafter.  Cal. Civ. Code § 1654.  But California law establishes a hierarchy for the conflicting rules of construction: interpreting a contract against the drafter should only be done "[i]n cases of uncertainty not removed by the preceding rules."  *Id.*   One of those "preceding rules" is the instruction to favor interpretations that render the contract legal. *See id.* § 1643; *Ayala-Ventura*, 342 Cal. Rptr. 3d at 513 (applying the same analysis to conclude that construing an agreement to avoid illegality takes priority over construing an agreement against the drafter).   Because the MAA can be construed to avoid illegality, the conflicting rule Cocom points to is inapplicable.

The context of other MAA provisions further supports the narrower reading.  Under California law, other provisions from a contract may be used to shed light on ambiguous language. *EFund Cap. Partners v. Pless*, 59 Cal. Rptr. 3d 340, 347 (Cal. Ct. App. 2007) ("[L]anguage in a contract must be interpreted as a whole …."  (citation omitted)).  Here, the MAA dictates that arbitrations are to be governed by the "AAA Employment Arbitration Rules and Mediation Procedures."  Those rules are applied "in the interest of providing an appropriate forum for the resolution of *employment* disputes."  Am. Arb. Ass'n, *Employment Arbitration Rules and Mediation Procedures* 7 (2016) (emphasis added).  To arbitrate under those rules, an employer must have "an *employment* [alternate dispute resolution] plan" and provide the AAA a copy of "the *employment* dispute resolution plan."  *Id.* (emphases added). The rules also provide that "[n]eutral arbitrators serving under these rules shall be experienced in the field of employment law," and the appointment of an arbitrator under the rules involves the AAA sending the parties a list of names chosen from the "Employment Dispute Resolution Roster."  *Id.* at 14–15.  Only if ABM intended the MAA to be limited to employment-related disputes does it make sense for the MAA to uniformly apply rules designed for *employment* disputes governed by *employment* dispute resolution plans to be ruled on by arbitrators with expertise in *employment* law.

Analyzing context differently, the district court contended that the MAA's carveout for claims "currently pending in litigation" would be surplusage if the MAA only covered employment-related claims because "no employment-related claims could be pending *prior to an employee signing the agreement during their onboarding*

*process*." But that is incorrect: even under the narrower interpretation we adopt, the carveout is not surplusage. Someone previously employed by ABM who was later rehired could have employment-related litigation pending when they signed the MAA. Alternatively, litigation concerning hiring—one of the disputes listed in the MAA's enumeration of covered claims—could be pending by the time a prospective employee signed the MAA. So the carveout for pending litigation does not support the district court's broader reading of the MAA's scope.

Even if the district court had correctly interpreted the MAA's scope, it still would have erred in assuming that the definition of covered claims automatically rose to the level of substantive unconscionability. The California Court of Appeal's decision in *Ayala-Ventura* directly rebuts that conclusion. 342 Cal. Rptr. 3d 500. There, the court noted that "the *Cook* court did not conclude an arbitration agreement covering all claims including those unrelated to employment is per se unconscionable." 342 Cal. Rptr. 3d at 513–14. The *Cook* court did not need to address the issue categorically because the employer there "appear[ed] to concede" that an agreement covering claims unrelated to employment would have been "unconscionably broad," a concession ABM has not made here. *Cook*, 321 Cal. Rptr. 3d at 344.

While the court in *Ayala-Ventura* concluded that the agreement at issue there *was* limited to employment-related disputes, it also explained that even if the agreement reached claims unrelated to employment, its scope would not be unconscionably broad. 342 Cal. Rptr. 3d at 513–14. *Cook* was distinguishable, the court found, because the *Cook* agreement "was unconscionable in part because of the multifarious ways in which a claim against USC 'completely

unrelated to [Cook's] employment' could arise." *Id.* at 514 (alteration in original) (quoting *Cook*, 321 Cal. Rptr. 3d at 341).   In contrast, the *Ayala-Ventura* court was "hard-pressed to discern how a similarly vast range of claims completely unrelated to Ayala-Ventura's employment could arise" given that the employer "solely provide[d] commercial janitorial services." *Id.*  So too here: ABM, like the employer in *Ayala-Ventura*, provides commercial janitorial services.   This case is therefore much more analogous to *Ayala-Ventura* than to *Cook* when it comes to the potential for claims unrelated to employment to arise, and *Ayala-Ventura* indicates that the scope of the MAA would not be unconscionable even under the district court's broader reading (which we do not accept in any event).

## C.  Duration

The district court, again applying *Cook*, found the MAA to have an indefinite duration and concluded that such a duration was substantively unconscionable.  *Cook*, 321 Cal. Rptr. 3d at 347.   But this conclusion was related to the erroneous conclusion that the MAA broadly covers any dispute imaginable.

The fact that the MAA is limited to employment-related disputes imposes an inherent limitation on the agreement's duration.  Because the *Cook* court read the agreement there as applying to all claims, even those unrelated to employment, it was realistic for the court to assume that covered claims might arise many years after Cook's employment ended.   321 Cal. Rptr. 3d at 347.   But employment-related claims—the only ones covered by the MAA—stop accruing when the employment relationship ends.  After that, the relevant statute of limitations for each potential claim would naturally limit the period in which

covered claims could be brought.  Because the MAA's more limited scope inherently limits the agreement's duration, the MAA's duration is not indefinite and not substantively unconscionable.

## D.  Mutuality

The third aspect of the MAA the district court found substantively unconscionable was the lack of mutuality arising from the MAA's requirement that Cocom arbitrate claims against ABM's "past, present, and future parent(s), subsidiaries, affiliates, and/or their respective past, present, and future officers, directors, and/or employees," as well as ABM's "client(s) and/or vendor(s)."  Citing *Cook*, the district court found an unconscionable lack of mutuality because the listed third parties "could easily enforce the agreement against" Cocom, but Cocom "would need to show that the entities actually accepted a benefit under the agreement" to enforce it against them.  But *Cook*'s lack-of-mutuality analysis is again distinguishable, and again largely because of the MAA's narrower scope.

*Cook* explicitly acknowledged that an arbitration agreement "cannot be unconscionable simply because it provides benefits to third parties."  *Id.* at 348.  As with duration, the lack of mutuality *Cook* found substantively unconscionable was predicated on the court's conclusion that the agreement applied to all claims, regardless of whether they were related to Cook's employment.  *See id.* ("No explanation [was] offered as to why Cook should [have been] required to give up the ability to ever bring claims in court against a USC employee *that are unrelated to USC or her employment there*."  (emphasis added)).  Unlike the claims *Cook* found to be covered by the agreement, employment-related claims have an inherent asymmetry: an

employee is far more likely to sue the employer and third parties—often many at a time, as Cocom has done here—rather than the other way around.

*Ayala-Ventura* is once again instructive. The court there distinguished *Cook*'s mutuality analysis, finding the inclusion of third parties not substantively unconscionable because the agreement at issue limited third parties' ability to invoke the arbitration agreement "to claims against [the employer's] employees or agents *in their capacity* as such," meaning that "[a]ny claims Ayala-Ventura may have [had] against employees or agents unrelated to their role" were not covered by the agreement. 342 Cal. Rptr. 3d at 515. The MAA does not explicitly include the same express limitation, but the fact that the MAA is limited to employment-related claims achieves a similar result. Just as in *Ayala-Ventura*, claims Cocom may have against third parties "unrelated to their role" in ABM would not be covered by the MAA. *Id.* Because of the MAA's more limited scope, the lack-of-mutuality analysis here is much more similar to *Ayala-Ventura* than to *Cook*, and any lack of mutuality does not rise to the level of substantive unconscionability.

## E. Preclusive and Precedential Effect

Although the district court did not reach the issue, Cocom also challenges the MAA provision that "any arbitration award shall have no preclusive effect as to issues or claims in any other dispute or arbitration proceeding and that arbitrators are barred from giving prior arbitration awards precedential effect."

The provision merely restates California's default rule on the preclusive effect of arbitration awards: "a private arbitration award, even if judicially confirmed, may not have

nonmutual collateral estoppel effect under California law unless there was an agreement to that effect in the particular case." *Vandenburg v. Superior Ct.*, 982 P.2d 229, 234 (Cal. 1999). Cocom does not point to any authority to suggest that applying California's default rule is unconscionable. Cocom also fails to provide any support for or meaningfully develop his argument that employees have a "right" to use arbitration awards as precedent. We conclude that the MAA's bar on using arbitration awards for preclusive or precedential effect is not substantively unconscionable.

## F.  PAGA Actions and Public Injunctive Relief

Even if the MAA's waivers of representative PAGA actions or of public injunctive relief were substantively unconscionable, those provisions would be severable, so we do not need to address whether either waiver rises to the level of substantive unconscionability.[2]

Under California law, the first step of the severance analysis is to assess whether "the central purpose of the contract is tainted with illegality." *Ramirez*, 551 P.3d at 546 (quoting *Armendariz*, 6 P.3d at 696). If not, the court should ask "whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." *Id.* Severance is the preferred course if no augmentation is required, but the court should still ask whether "severance of the unconscionable terms would function to condone an illegal scheme" adopted in a "systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger

---

[2] We also need not resolve whether the MAA does, in fact, bar all public injunctive relief, a point which the parties dispute.

party's advantage." *Id.* at 547.  Courts should treat explicit severability clauses "as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." *Id.*[3]

The parties' "central purpose" in agreeing to the MAA was to arbitrate employment-related claims.  The waivers of representative PAGA suits and of public injunctive relief are therefore "collateral to the contract's main purpose." *Id.*  So even if those waivers violate California law, severing them would require no "augmentation" of the contract. *Id.*  And the MAA does not suggest any "systematic effort" to impose arbitration as anything more than "an alternative to litigation." *Id.*  Moreover, severing the two waivers—again, assuming without deciding that they are substantively unconscionable—would vindicate the intent of the parties as expressed in the MAA's severability provision.  Because the waivers of representative PAGA actions and of public injunctive relief could properly be severed if unconscionable, neither provision suffices to create a workable unconscionability defense against enforcing the MAA to compel arbitration of Cocom's claims.

---

[3] The district court's severability analysis, which cited the severability analysis from *Cook*, 321 Cal. Rptr. 3d 349–50, was premised on erroneously finding the MAA's scope, duration, and lack of mutuality to be substantively unconscionable.  Because *Cook*'s analysis of each of those provisions is distinguishable, we conclude that the district court's ultimate refusal to sever unconscionable provisions meets the abuse of discretion standard applicable to severability determinations. *Lim*, 8 F.4th at 999; *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").  We therefore reconduct the severability analysis with respect to the MAA's waiver of representative PAGA actions and of public injunctive relief.

**IV.**

We **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.